ROBERT A. NAGY *v.* EMPLOYEES' REVIEW
BOARD ET AL.

HUGH BARBER ET AL. *v.* EMPLOYEES' REVIEW
BOARD ET AL.
(SC 16003)
(SC 16025)

Callahan, C. J., and Borden, Berdon, McDonald and Peters, Js.

694

Argued April 28—officially released July 27, 1999

*David A. Ryan, Jr.*, for the appellants in Docket No. 16003, appellees in Docket No. 16025 (defendant commissioner of administrative services et al.).

*Robert A. Nagy* and *John P. Clifford, Jr.*, for the appellees in Docket No. 16003, appellants in Docket No. 16025 (plaintiffs).

*Barry Scheinberg* filed a brief for P-5 Administrative and Residual Employees Union as amicus curiae.

*Opinion*

CALLAHAN, C. J. The named plaintiffs in these two consolidated appeals, Robert A. Nagy and Hugh Barber, are assistant attorneys general of the state of Connecticut.[1] In 1995, the terms of the plaintiffs' employment were modified to increase gradually the length of their standard workday from seven to eight hours. The principal issue in these appeals is whether, pursuant to General Statutes (Rev. to 1995) §§ 5-247 and 5-250,[2] one day

---

[1] The other plaintiffs, Ronald Blanchette, Leo T. Budnick, Nyle K. Davey, Wilbur Ward Dinegar, Andrea Gaines, Kenneth A. Graham, Richard Greenberg, Robert L. Klein, Judith A. Merrill and David Henry Wrinn, also are assistant attorneys general of the state of Connecticut.

[2] General Statutes (Rev. to 1995) § 5-247 provides in relevant part: "(a) Each appointing authority shall grant, on account of illness or injury, to each full-time employee in a permanent position in the state service who has furnished satisfactory proof of such illness or injury, such sick leave with pay as has accrued to his credit at the rate of one and one-quarter working days for each completed calendar month of continuous full-time service which may be computed on an hourly basis. Hourly computation of sick leave shall not diminish benefit entitlement. . . . Each such employee who retires under the provisions of chapter 66 shall be compensated, effective as of the date of his retirement, at the rate of one-fourth of such employee's salary for sick leave accrued to his credit as of his last day on the active payroll up to a maximum payment equivalent to sixty days or four hundred twenty hours' pay. . . ." The reference to "four hun-

of sick or vacation leave earned by the plaintiffs during the time the length of the standard workday was seven hours entitles them to utilize a full day of sick or vacation leave now that the standard workday is eight hours. We conclude that it does.

The following facts and procedural history are uncontroverted. In early 1995, the state entered into a collective bargaining agreement with the state P-5 Administrative and Residual Employees Union (P-5 agreement). Pursuant to the P-5 agreement, the length of the union members' standard workday was increased from seven hours to eight hours.[3] Prior to that change,

dred twenty hours' pay" was eliminated by Public Acts 1996, No. 96-168. Because that change is technical and not relevant to this appeal, we refer herein to the current revision of § 5-247.

General Statutes (Rev. to 1995) § 5-250 provides in relevant part: "(a) Each appointing authority shall grant to each full-time employee in a permanent position in the state service, who has worked at least one full calendar year, an annual vacation with pay of twenty-one consecutive calendar days or its equivalent. Each such employee who has completed twenty years of service shall be entitled to one day or seven additional working hours for each additional year up to twenty-five years of service, and each such employee with twenty-five or more years of service shall be entitled to not more than twenty days or one hundred forty hours vacation, subject to regulations issued by the commissioner of administrative services. The commissioner of administrative services may adopt regulations, in accordance with the provisions of chapter 54, concerning the accrual, prorating and granting of vacation leave with pay as required. Computation of such vacation leave may be made on an hourly basis. Hourly computation of vacation leave shall not diminish benefit entitlement.

"(b) An appointing authority may permit a full-time permanent employee in the state service to accumulate vacation days with pay up to a maximum of one hundred twenty vacation days, subject to regulations issued by the commissioner of administrative services. . . ." The references in subsection (a) to "seven additional working hours" and "one hundred forty hours" were deleted by Public Acts 1996, No. 96-168. Because those changes are technical and not relevant to this appeal, we refer herein to the current revision of § 5-250.

[3] Specifically, the P-5 agreement provided that the increase in the number of hours in the standard workday would occur over a four year period by extending the length of the standard workday to: seven hours and fifteen minutes on July 1, 1995; seven hours and thirty minutes on July 1, 1996; seven hours and forty-five minutes on July 1, 1997; and finally to eight hours on July 1, 1998.

the union members' sick and vacation leave had been calculated at the rate of seven hours for each day of sick or vacation leave earned. To reflect the change in the length of the standard workday, the P-5 agreement provided that *future* accruals of sick and vacation leave time would be calculated at a rate of eight hours for each day of leave earned.

The plaintiffs are nonunionized employees in the classified service of the state and, consequently, the terms of their employment are not governed by the P-5 agreement. In June, 1995, however, the defendant commissioner of the department of administrative services (commissioner), invoking authority provided him by General Statutes § 5-200 (p),[4] extended certain provisions of the P-5 agreement to the plaintiffs. Specifically, the commissioner notified the plaintiffs that, as of July 1, 1995: (1) their standard workday would be increased over four years from seven to eight hours; (2) they would receive a salary increase to reflect the longer workday; and (3) the value of future sick and vacation days would be calculated in accordance with the number of hours in the increased workday. The notification

---

[4] General Statutes § 5-200 (p) provides in relevant part: "When such authority is not otherwise conferred by statute, the commissioner may issue orders to provide that (1) executive or judicial branch employees exempt from the classified service or not included in any prevailing bargaining unit contract . . . be granted rights and benefits not less than those granted to employees in the classified service or covered under such contracts, or (2) retirement benefits for state employees exempt from the classified service or not included in any prevailing bargaining unit contract and employees of state-aided institutions, as defined in section 5-175, be adjusted to provide retirement benefits for such employees which are the same as those most frequently provided under the terms of approved bargaining unit contracts in effect at the time of such adjustment. . . . Where there is a conflict between an order granting such rights and benefits and any provision of the general statutes, such order shall prevail. Such orders shall be subject to the approval of the Secretary of the Office of Policy and Management. If the secretary approves such order, and such order is in conflict with any provision of the general statutes, the secretary shall forward a copy of such order to the joint committee of the General Assembly having cognizance of labor matters."

also stated that the plaintiffs would receive only seven hours credit toward sick and vacation leave for each day of leave earned prior to July 1, 1995.[5]

Thereafter, pursuant to General Statutes § 5-202,[6] the plaintiffs appealed from the commissioner's order to the named defendant, the employees' review board (board),[7] claiming that §§ 5-247 and 5-250, the statutory provisions that address their rights to sick and vacation leave, entitle them to a full day of leave for each day of sick and vacation leave previously earned, despite the increase in the length of the standard workday. The board denied the plaintiffs' appeal, and the plaintiffs brought this administrative appeal[8] from the board's

---

[5] The record reveals that the state also entered into a similar collective bargaining agreement with another state employee union, the NP-5 Protective Services unit (NP-5 agreement), and that certain provisions of the NP-5 agreement were extended to the plaintiffs pursuant to § 5-200 (p). The parties, however, appear to concede that the relevant provisions of the NP-5 agreement are analogous to those of the P-5 agreement and are not otherwise germane to the issues raised in these appeals.

[6] General Statutes § 5-202 provides in relevant part: "(a) Any employee who is not included in any collective bargaining unit of state employees and who has achieved a permanent appointment as defined in subdivision (19) of section 5-196 may appeal to the Employees' Review Board if he or she receives an unsatisfactory performance evaluation or is demoted, suspended or dismissed, or is aggrieved as a result of alleged discrimination, or unsafe or unhealthy working conditions or violations involving the interpretation and application of a specific state personnel statute, regulation or rule. . . ." At the time of the appeal, § 5-202 (a) referred to subsection (r) of General Statutes § 5-196. The technical change in reference to subdivision (19) was made by Public Acts, Spec. Sess., June, 1998, No. 98-1, § 43.

[7] As a prerequisite to bringing an action before the employees' review board, § 5-202 required the plaintiffs first to submit their dispute to: (1) their direct superiors at the attorney's general office; (2) the attorney general himself; and (3) the commissioner of the department of administrative services. See General Statutes § 5-202 (g), (h) and (i). The plaintiffs' claims were denied at each of these levels.

[8] Initially, Nagy filed his appeal with the Superior Court in the judicial district of Fairfield, and Barber and the other plaintiffs filed their appeal with the Superior Court in the judicial district of Hartford. Thereafter, the cases were consolidated for hearing and decision. The defendants in both appeals are the board, the commissioner and the attorney general. Additionally, the secretary of the office of policy and management is a defendant in Nagy's appeal.

decision to the Superior Court pursuant to General Statutes § 4-183.[9] The trial court overruled the board's decision, concluding, as advocated by the plaintiffs, that, pursuant to §§ 5-247 and 5-250, the plaintiffs had accrued their sick and vacation time in units of days and not hours, and that the plaintiffs were entitled to a full day of sick or vacation leave for each day previously earned, despite any increase in the standard workday. The defendants then appealed from the judgment of the trial court to the Appellate Court.

Shortly thereafter, Nagy filed a motion in the trial court, pursuant to General Statutes § 4-184a (b),[10] seeking an award of costs, while the plaintiffs in the Barber appeal, also pursuant to § 4-184a (b), filed a motion seeking an award for attorney's fees and costs. The court denied both motions. The plaintiffs then filed a joint appeal in the Appellate Court, claiming that the trial court improperly had denied their motions for costs and attorney's fees. We consolidated the appeals and transferred them to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

I

THE DEFENDANTS' APPEAL

On appeal, the defendants claim that the trial court improperly determined that: (1) §§ 5-247 and 5-250 entitle the plaintiffs to a full day of sick or vacation leave

[9] General Statutes § 4-183 provides in relevant part: "(a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

[10] General Statutes § 4-184a (b) provides in relevant part: "In any appeal by an aggrieved person of an agency decision taken in accordance with section 4-183 . . . the court may, in its discretion, award to the prevailing party, other than the agency, reasonable fees and expenses in addition to other costs if . . . the court determines that the action of the agency was undertaken without any substantial justification."

for each day of sick or vacation leave earned prior to the increase in the length of the standard workday to eight hours; and (2) alternatively, the commissioner's order extending the benefits of the P-5 agreement to the plaintiffs did not supersede the plaintiffs' rights to sick and vacation time pursuant to §§ 5-247 and 5-250. We affirm the judgment of the trial court.

## A

The defendants first claim that the trial court improperly concluded that §§ 5-247 and 5-250 entitle the plaintiffs to a full day off for each day of sick and vacation leave previously earned, despite the increase in the length of the standard workday. In other words, the defendants maintain that §§ 5-247 and 5-250 grant sick and vacation leave in units of *hours* rather than in units of *days*. To the contrary, the plaintiffs maintain that, although §§ 5-247 and 5-250 *allow* the state to *calculate* sick and vacation leave in units of *hours*, those statutory provisions *grant* sick and vacation time in units of *days*. Consequently, the plaintiffs argue that the defendants' failure to increase the value of their previously earned sick and vacation days commensurate with the increased length of the standard workday impermissibly diminished the total number of days of sick and vacation leave that they had earned prior to the gradual increase in the length of the standard workday to eight hours.[11] We agree with the plaintiffs.

---

[11] The impact of the state's failure to recalculate existing sick and vacation hours in accordance with the increased number of hours in the workday can be seen in the example of one of the named plaintiffs, Barber. Specifically, it is undisputed that, on June 30, 1995, Barber had accumulated 1368 sick hours and 677.5 vacation hours which, on June 30, 1995, entitled him to utilize 195.4 days of sick leave and 96.8 days of vacation leave. The extension of the workday to seven hours and fifteen minutes on July 1, 1995, reduced the value of Barber's sick and vacation leave to 188.7 days and 93.45 days respectively.

As a threshold matter, we determine the applicable standard of review. "Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference." (Citations omitted; internal quotation marks omitted.) *In re Baby Z.*, 247 Conn. 474, 493–94, 724 A.2d 1035 (1999). The board's determination that §§ 5-247 and 5-250 do not require the defendants to increase the value of sick and vacation leave previously accrued by the plaintiffs to reflect the gradual increase of the standard workday has not been subject previously to judicial review, and is a pure question of law involving the interpretation of the relevant statutory provisions. Consequently, we afford the conclusion of the board no special deference. See id.

We begin our analysis by noting that interpretation of §§ 5-247 and 5-250 is a matter of statutory construction. In interpreting statutes we previously have stated that "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal

quotation marks omitted.) *Fimiani* v. *Star Gallo Distributors, Inc.*, 248 Conn. 635, 642, 729 A.2d 212 (1999); *General Motors Corp.* v. *Dohmann*, 247 Conn. 274, 286, 722 A.2d 1205 (1998).

" 'As with any issue of statutory interpretation, our initial guide is the language of the operative statutory provisions.' " *Fimiani* v. *Star Gallo Distributors, Inc.*, supra, 248 Conn. 642; *In re Baby Z.*, supra, 247 Conn. 498. Section 5-247 (a), the statute that addresses the granting and accrual of sick leave, provides in relevant part: "Each appointing authority shall grant, on account of illness or injury, to each full-time employee in a permanent position in the state service who has furnished satisfactory proof of such illness or injury, such sick leave with pay as has accrued to his credit at the rate of one and one-quarter working *days* for each completed calendar month of continuous full-time service which *may* be computed on an hourly basis. Hourly computation of sick leave shall not diminish benefit entitlement. . . ." (Emphasis added.) Thus, by its own terms, § 5-247 grants the plaintiffs one and one-quarter *days* of sick leave each month, and only *permits* the state to track the total number of days that an employee has earned in units of hours. The language of § 5-247, furthermore, indicates that the computation of sick leave in units of hours "shall not" reduce the days of leave that an employee is entitled to utilize. In other words, the language of § 5-247 strongly suggests that the reference to hourly computation of sick leave was intended to allow the calculation of an employee's accrued sick leave in units of hours for internal administrative purposes only, and not for the purpose of determining the days of sick leave an employee previously had earned.

Section 5-250 (a), the statutory provision that addresses the granting and accrual of vacation leave, similarly provides in part: "Each appointing authority

shall grant to each full-time employee in a permanent position in the state service, who has worked at least one full calendar year, an annual vacation with pay of twenty-one consecutive *calendar days* or its equivalent. Each such employee who has completed twenty years of service shall be entitled to *one day* for each additional year up to twenty-five years of service, and each such employee with twenty-five or more years of service shall be entitled to not more than *twenty days* . . . . Computation of such vacation leave may be made on an hourly basis. Hourly computation of vacation leave shall not diminish benefit entitlement." (Emphasis added.) As with § 5-247, this statutory provision indicates that employees earn vacation leave in units of days, but that an employee's earned vacation leave may be calculated in units of hours. Again, § 5-250 specifically provides that the conversion of vacation days into an hourly figure may not operate to reduce the benefits to which the employee is entitled. Thus, the language of § 5-250 also strongly suggests that the hourly calculation of vacation leave has no independent significance, and that instead, it is merely a representation, in units of hours, of the total number of vacation days that an employee has earned.

Moreover, the legislative history of §§ 5-247 and 5-250 also indicates that the hourly computation of sick and vacation leave was not intended to govern the determination of the number of sick and vacation days an employee has earned. As initially enacted in 1967, §§ 5-247 and 5-250 referred to sick and vacation leave *exclusively in terms of days*. Public Acts 1967, No. 657, §§ 55 and 58. In 1979, however, Public Acts 1979, No. 79-621, amended §§ 5-247 and 5-250 to allow for the calculation of sick and vacation leave in units of hours. In the discussion on the floor of the House of Representatives of House Bill No. 7678, the bill that eventually was enacted as Public Acts 1979, No. 79-621, Representative

John J. Tiffany II, and Representative Gardner E. Wright, Jr., engaged in a colloquy regarding the effect of permitting the hourly calculation of sick and vacation leave. Specifically Representative Tiffany remarked: "I notice on page 19 and 20, we're making a number of changes from the converting [of] days to hours. . . . [W]ill the State or the State employees stand to gain or lose from this change? Will there be any reduction or additional privileges?" 22 H.R. Proc., Pt. 31, 1979 Sess., p. 11,009. In response to Representative Tiffany's question, Representative Wright, the sponsor of the bill, stated: "The purpose of doing that is because our new *computer system calculates everything in hours and we are able to calculate employees' benefits, vacations in terms of hours instead of days in the new system. And that's the only reason.* We have been assured and we have assured the State employees that this will not increase or decrease anybody's benefits. They will remain exactly as they are at present." (Emphasis added.) Id., pp. 11,009–10. Thus, Representative Wright's remarks manifest an intention to permit the hourly calculation of sick and vacation leave only as a matter of administrative convenience, and not as a change in the method of accruing sick and vacation days.

In light of the language and legislative history of §§ 5-247 and 5-250, we conclude that the hourly calculation of sick and vacation leave authorized by those statutory provisions may not operate to reduce the total number of days of sick and vacation leave that an employee has earned. Consequently, §§ 5-247 and 5-250 entitle the plaintiffs to the number of *days* of sick and vacation leave previously earned, despite an increase in the number of hours in their standard working day. Therefore, pursuant to §§ 5-247 and 5-250, an employee who earns one day of sick or vacation leave is entitled to utilize one day of sick or vacation leave regardless of any

lengthening of the standard workday. Simply put, a day is a day is a day.

## B

The defendants next claim that even if §§ 5-247 and 5-250 provide that an employee who earns one day of sick or vacation leave is entitled to utilize one day of sick or vacation leave regardless of any lengthening of the standard workday, the plaintiffs' sick and vacation leave still is not entitled to such treatment. In support of this claim, the defendants set forth the following three step argument: (1) with respect to the treatment of the plaintiffs' previously accrued sick and vacation days, the terms of the P-5 agreement conflict with and supersede §§ 5-247 and 5-250; (2) § 5-200 (p) grants the commissioner authority to extend to the plaintiffs rights and benefits based on those granted to employees covered by the P-5 agreement and provides that an order of the commissioner granting such rights and benefits shall prevail over any contrary provision of the General Statutes; and (3) consequently, to the extent that the commissioner's order conflicts with §§ 5-247 and 5-250, the commissioner's order controls. We disagree.

We begin by examining the first proposition in the defendants' argument, namely, that the provisions of the P-5 agreement conflict with and supersede §§ 5-247 and 5-250 with respect to the treatment of previously accrued sick and vacation leave. In order for the P-5 agreement to conflict with those statutory sections in the manner suggested by the defendants, the P-5 agreement must provide, in effect, that the value of union members' previously accrued sick and vacation leave would *not* be adjusted commensurate with the increase in the length of the standard workday. The P-5 Administrative and Residual Employees Union, however, as amicus curiae in the present case, vigorously

contends that the P-5 agreement contains no such provision. Moreover, in the proceedings before the board and at trial, no factual finding was made with respect to whether the P-5 agreement either expressly or implicitly addresses the treatment of union members' previously accrued sick and vacation leave. As such, the record before us does not permit a finding that the P-5 agreement, in fact, contains a provision that conflicts with §§ 5-247 and 5-250.

Moreover, even if we were to assume, without deciding, that the P-5 agreement provides that the value of union members' previously accrued sick and vacation leave will not be adjusted to reflect the increased length of their standard workday, we still would be unable to conclude that such provision supersedes §§ 5-247 and 5-250. General Statutes § 5-278,[12] the statute that permits a collective bargaining term to supersede inconsistent statutes or regulations, explicitly provides that, in order for a provision of a collective bargaining agreement that conflicts with a statute or regulation to be effective, that provision must be submitted to the legislature for its approval. We previously have stated, moreover, that "General Statutes § 5-278 (b) implicitly requires that, in order for the legislature to 'approve or reject' a collective bargaining agreement term in conflict with law, the

---

[12] General Statutes § 5-278 provides in relevant part: "(b) Any agreement reached by the negotiators shall be reduced to writing. The agreement, together with a request for . . . approval of any provisions of the agreement which are in conflict with any statute or any regulation of any state agency . . . shall be filed by the bargaining representative of the employer with the clerks of the House of Representatives and the Senate within ten days after the date on which such agreement is reached . . . . The General Assembly may approve any such agreement as a whole by a majority vote of each house or may reject such agreement as a whole by a majority vote of either house. . . .

"(e) Where there is a conflict between any agreement . . . approved in accordance with the provisions of sections 5-270 to 5-280, inclusive, on matters appropriate to collective bargaining, as defined in said sections, and any general statute or special act, or regulations adopted by any state agency, the terms of such agreement . . . shall prevail . . . ."

particular contract term must be stated *distinctly* and *correctly* by the employer in the transmittal of the contract to the legislature. If the notification required by § 5-278 (b) did not apprise the legislature of the conflicting sick [and vacation] leave term[s], then [those] term[s], at variance with General Statutes [§§ 5-247 and 5-250], would be ultra vires. Put another way, a term at variance with law, not approved by the legislature in accordance with General Statutes § 5-278 (b), does not enjoy the preferential position provided for legislatively approved conflicting terms by § 5-278 (e), but is rendered a nullity. Neither party to the agreement is therefore entitled to enforce that term." (Emphasis added.) *Board of Trustees* v. *Federation of Technical College Teachers*, 179 Conn. 184, 197, 425 A.2d 1247 (1979). Just as the record does not permit a conclusion that the P-5 agreement conflicts with §§ 5-247 and 5-250, with respect to the treatment of previously earned sick and vacation leave, the record also does not permit a conclusion that any such conflicting provisions in the P-5 agreement, if they in fact exist, were submitted to the legislature and approved. Therefore, we cannot conclude that the P-5 agreement supersedes §§ 5-247 and 5-250 with respect to the treatment of previously accrued sick and vacation leave.

Because the record does not support the conclusion that the P-5 agreement contains a provision that conflicts with §§ 5-247 and 5-250, or that if such a conflict does exist, that it supersedes §§ 5-247 and 5-250 in accordance with the requirements of § 5-278, we cannot assume that the treatment of previously accrued sick and vacation leave contained in the commissioner's order was based on the provisions of the P-5 agreement. Consequently, on the record before us, we cannot conclude that, pursuant § 5-200 (p), the commissioner's order superseded §§ 5-247 and 5-250 with respect to

the treatment of previously accrued sick and vacation leave.

We conclude, therefore, that, as a matter of law, the plaintiffs are entitled to the number of days of sick and vacation leave previously earned, despite an increase in the number of hours in their standard workday. Accordingly, the judgments of the trial court on the merits must be affirmed.

## II

## THE PLAINTIFFS' JOINT APPEAL

In their joint appeal, the plaintiffs claim that the trial court improperly denied their motions for attorney's fees and costs pursuant to General Statutes § 4-184a (b). Specifically, the plaintiffs maintain that the trial court applied an incorrect legal standard in determining that they were not entitled to reimbursement for attorney's fees and costs. We disagree.

"The decision to award attorney's fees for unjustified agency actions is within the discretion of the trial court. See General Statutes § 4-184a (b); *Labenski* v. *Goldberg*, 41 Conn. App. 866, 871, 678 A.2d 496, cert. denied, 239 Conn. 910, 682 A.2d 1002 (1996). Thus, § 4-184a (b) provides that the 'court may, in its discretion,' award reasonable fees to the prevailing party if the court determines that the agency acted 'without any substantial justification.' . . . Accordingly, we review the trial court's decision to award attorney's fees for abuse of discretion. *State* v. *Reddick*, 224 Conn. 445, 467, 619 A.2d 453 (1993) (reversal warranted 'where an abuse of discretion is manifest or where injustice appears to have been done')." *Burinskas* v. *Dept. of Social Services*, 240 Conn. 141, 154–55, 691 A.2d 586 (1997).

"Section 4-184a (b) authorizes a court to grant attorney's fees if it determines that the action of the agency was undertaken without any substantial justification.

We recently have concluded that substantial justification . . . connotes reasonableness or a reasonable basis in law or fact. *Burinskas* v. *Dept. of Social Services*, supra, 240 Conn. 156. Thus, we have construed § 4-184a (b) as requiring an action that is entirely unreasonable or without any reasonable basis in law or fact." (Internal quotation marks omitted.) *Connecticut Assn. of Not-for-Profit Providers for the Aging* v. *Dept. of Social Services*, 244 Conn. 378, 401, 709 A.2d 1116 (1998).

Our examination of the trial court's memorandum of decision reveals that, contrary to the plaintiffs' assertion, the trial court articulated and applied the correct legal standard for the determination of an award of attorney's fees and costs pursuant to § 4-184a (b). Moreover, we conclude that the trial court did not abuse its broad discretion in determining that the defendants' actions in the present case were not "entirely unreasonable or without any reasonable basis in law or fact." *Burinskas* v. *Dept. of Social Services*, supra, 240 Conn. 156. Consequently, the plaintiffs' claim for attorney's fees and costs is without merit.

The judgments are affirmed.

In this opinion the other justices concurred.