[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by the plaintiff, secretary of the office of policy and management ("OPM"), from a June 1, 2001 final decision of the employees' review board ("the review board") finding in favor of the defendant, Catherine Osten, an employee of the department of correction ("the department") on her grievance under the State Personnel Act, General Statutes § 5-193 et seq. This appeal is authorized by General Statutes §§ 5-202 (l) and 4-183 of the Uniform Administrative Procedure Act ("UAPA").
The final decision of the review board states in relevant part as follows: "Board Case Number 900A alleges that the [department] "is not calculating personal leave time and holidays for Lieutenants and Captains CT Page 4591 as an earned day but at the rate of (8) hours' and that the "difference is being unilaterally taken from vacation time which is in violation of CGS 5-250 (c)'." (Return of Record ("ROR"), Item 20, p. 1.) The review board made the following findings of fact relevant to this appeal:
 1. The Grievant has been employed by the [department] since August 1988, and has been a Lieutenant since 1994.
 2. From 1989 to 1994 Grievant worked five days on and three days off, a schedule that repeated every eight weeks. Her work day was 8.25 hours and averaged 36.25 hours over the eight weeks period. She was compensated for a 35 hour week schedule and received a compensatory day off every month.
 3. At the time of the filing of these appeals, she worked an 11:30 PM to 8:00 AM (8.5 hours) schedule, based on four days on and two days off, repeating every six weeks.
 4. In 1999, the Grievant was transferred to the Corrigan Correctional Institution. . . .
 * * * 7. At the Corrigan Correctional Institution, the Grievant, since October 2000, has been working a ten hour per day schedule.[1]
 8. During the period of her employment by [the department] as a Lieutenant, the Grievant has worked 8.5 to 10 hour work days. Her weekly schedule has "averaged" 40 hours per week over six or eight week's periods.
 9. The standard work day for managers is eight hours; the standard work week is forty hours.
(ROR, Item 20, p. 2.)
Based upon these findings of fact, the review board concluded that Osten's request for recalculation of personnel leave time and holiday time should be granted. The fact that Osten works a non-standard work week is irrelevant to her right to take "calendar days" for personal leave and holidays. Accordingly, the department was ordered to make any CT Page 4592 necessary adjustments to Osten's accrued vacation time in accordance with the review board's decision. (ROR, Item 20, pp. 3-4.) This appeal followed.[2]
The parties agree that the issue before the court is one of statutory interpretation.[3] "In construing statutes, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Doyle v.Metropolitan Property Casualty Ins. Co., 252 Conn. 79, 84, 743 A.2d 156
(2000)." (Internal quotation marks omitted.) Lisee v. Commission on HumanRights Opportunities, 258 Conn. 529, 536 (2001).
The two statutes at issue, General Statutes §§ 5-250 (c) and 5-254 (a), were §§ 58(c) and 60(a) of Public Act 1967, No. 657, which enacted a personnel code for state employees. These provisions have not been altered in any material respect from 1967 to the present. Section 5-250 (c) provides as follows: "In addition to annual vacation [allowed in §5-250 (a)], each appointing authority shall grant to each full-time permanent employee in the state service three days of personal leave of absence with pay in each calendar year. Personal leave of absence shall be for the purpose of conducting private affairs, including observance of religious holidays, and shall not be deducted from vacation or sick leave credits. Personal leave of absence days not taken in a calendar year shall not be accumulated." Section 5-254 (a) currently provides in part: "Each full-time permanent employee in the state service shall be granted time off with pay for any legal holiday. If a legal holiday falls on a Saturday, employees shall be granted equivalent time off on the Friday immediately preceding such Saturday or given another day off in lieu thereof"
The State Personnel Act was passed in the 1967 legislative session. The legislation was the outgrowth of a report by the J.L. Jacobs 
Company[4] ("Jacobs report") submitted to the General Assembly. In the debate approving the State Personnel Act, legislators clearly linked the Jacobs report to the act. Senators noted this connection: "[T]his bill is the culmination of the Jacobs report which was authorized by the 1965 Legislature. This report was further reviewed and studied by a committee appointed by the Governor. After this careful study and long deliberations, the bill was put into form and amended." 12 S. Proc., Pt. 5, 1967 Sess., p. 2306, remarks of Senator Janovic. The act "adopts many of the recommendations in the Jacobs report." 12 S. Proc., Pt. 5, 1967 Sess., p. 2308, remarks of Senator Pope. In both chambers, the members CT Page 4593 uniformly agreed with Senator Hammer's remarks that the proposed code was "a better system than we have now." 12 S. Proc., Pt. 5, 1967 Sess., p. 2308.
The Jacobs report has two references to personal days and holidays for state employees. Jacobs, Picture at page 25 states: "In addition a personal leave allowance of a maximum of five days per year is provided to all employees to cover religious holidays not observed officially by the state and other urgent personal requirements for absence." Volume Two of the full report at page 40 states:
 The current practice of the state is to provide 11 paid holidays per year to all employees. Nine of these holidays are specified in Section 1 of the General Statutes and the other two, Good Friday and [Thanksgiving] Day, are declared legal holidays by the Governor. The predominant practice now throughout the country is that Thanksgiving Day is observed as a holiday without special declaration. Good Friday is a religious holiday. There are several other religious holidays which are not observed by all employees, and at the present time these employees must either use vacation or receive no pay for observing the holidays of their own religion.
 RECOMMENDATION: That, in addition to the nine holidays specified in the statutes, Thanksgiving Day also be included as a holiday; and that up to five days of personal leave be permitted annually for all employees to be used primarily for the observance of religious holidays in order to be equitable to employees of difference religions, or for the conduct of personal business.
 * * * The New England area is somewhat more liberal in holiday benefits than other areas of the United States. Governmental agencies in New England are considerably more liberal than private employers.
The Jacobs report provides both the rationale and the text for the two provisions at issue in this case. The report demonstrates that the three personal leave "days" of § 5-250 (c) are directly related to the holiday leave allowed in § 5-254 (a). CT Page 4594
The word "day," when unqualified, means "a calendar day." Thus, a city erred when its firemen were given their "day off' by not having to work from 3 a.m. of one day to 3 a.m. of another day. "And a calendar day is the space of time that elapses between two successive midnights. . . ." (Citations omitted.) Booker v. Chief Engineer of Fire Department,85 N.E.2d 766, 767 (Mass. 1949). Thus, at common law the number of hours
worked does not affect the meaning of the word "day." A "holiday" is a special type of "day," set apart "for worship, for reverence to the memory of a great leader and benefactor of humanity, to rejoice over some great national or historical event, or rekindle the flame of an ideal. . . ." (Citations omitted.) Laubisch v. Roberdo, 277 P.2d 9, 14 (Cal. 1954).
The case of Nagy v. Employees' Review Board, 249 Conn. 693 (1999), as it involves sick and vacation leave under the State Personnel Act, is also relevant in interpreting the personal and holiday leave allowed under the act. The sections allowing for sick and vacation leave, General Statutes §§ 5-247 (a) and 5-250 (a), respectively, enacted in 1967, allowed for the earning of certain "days" during a calendar year. In 1979, the legislature allowed the state to calculate benefits in terms of hours. Public Act 1979, No. 79-621. In 1995, when the non-bargaining unit employees' workday increased gradually from seven to eight hours, several assistant attorneys general objected to the state's declaration that they would receive only seven hours credit for their sick and vacation leave earned prior to July 1, 1995. The assistant attorneys general were successful in reversing the state's rule in an administrative appeal to the Superior Court.
In a further appeal to the Supreme Court, the state contended that the sick and vacation leave was granted in units of "hours," not days, while the assistant attorneys general maintained "that although §§ 5-247 and5-250 allow the state to calculate sick and vacation leave in units ofhours, those statutory provisions grant sick and vacation time in units of days. Consequently, the [assistant attorneys general] argue that the [state's] failure to increase the value of their previously earned sick and vacation days commensurate with the increased length of the standard workday impermissibly diminished the total number of days of sick and vacation leave that they had earned prior to the gradual increase in the length of the standard workday to eight hours." (Emphasis in original.)Nagy v. Employees' Review Board, supra, 249 Conn. 700.
The Supreme Court rejected the state's position and agreed with the assistant attorneys general. Finding that the legislature intended "to permit the hourly calculation of sick and vacation leave [in the 1979 amendment] only as a matter of administrative convenience, and not as a change in the method of accruing sick and vacation days." Nagy v.Employees' Review Board, supra, 249 Conn. 704. The Supreme Court CT Page 4595 concluded that the assistant attorneys general were entitled to "the number of days of sick and vacation leave previously earned, despite an increase in the number of hours in their standard working day. Therefore . . . an employee who earns one day of sick or vacation leave is entitled to utilize one day of sick or vacation leave regardless of any lengthening of the standard workday. Simply put, a day is a day is a day." (Emphasis in original.) Id., 704-05.
The "apparent intent" of the legislature found in Nagy is even stronger in the present case. Here, there is no legislation subsequent to 1967 that even intimates that anything other than a "day" or a "holiday" is to be granted to an employee or that work hours are relevant in this grant. Indeed, § 5-250 (c) specifically mentions that the three personal days are not to be deducted from an employees sick or vacation balances.[5]
Under regulations issued by the department of administrative services, a holiday is to take precedence over a sick day or a vacation day, and is not charged against sick leave or vacation balances. Regs., Conn. State Agencies §§ 5-247-8 and 5-250-8.
OPM argues that other provisions in the State Personnel Act indicate that a "day" is equivalent to a standard eight-hour day, but these provisions are not relevant to benefits afforded by §§ 5-250 (c) and5-254 (c). The statute on overtime by state employees, § 5-245, is concerned with the employee who works more than a certain number of hours
during a regular, established workweek. Section 5-238 allows the department of administrative services to set the hours of the standard work week. Section § 5-238-1 of the Regulations of Connecticut State Agencies sets the standard workday at seven hours, but this has been changed by directive of the department of administrative services to eight hours. Nagy v. Employees' Review Board, supra, 249 Conn. 695. This provision does not impact on the meaning of a personal "day" or "holiday" when an employee works a non-standard week; nor does § 5-238-2 of the Regulations of Connecticut State Agencies, authorizing the state to establish a non-standard work day. In contrast to the arguments of OPM, § 5-238-4 of the Regulations of Connecticut State Agencies, sets the work day as lasting from 12:01 a.m. to 12:01 a.m. of the following day — a calendar day. Section 5-254 (a) and 5-254 (b) grant holiday pay for those employees who work less than full-time. These statutes and the regulations authorized thereunder do not treat the matter of the full-time employee who works longer hours in a day and a shortened week.
OPM further argues that the court must take into account its goal of the standardization of the employee day. It argues that it would be inconsistent and illogical for those who work a non-standard week to have more hours off on holiday than those that work the usual eight-hour day. The short answer to this is that the legislature approved personal leave CT Page 4596 and holiday benefits in 1967, and the court must rely on the language as then written, not on suggested refinements, appropriate to 2002. "Legislative intent is found not in what the legislature meant to say but in the meaning of what it did say. . . ." (Citation omitted.) Gelinas v.West Hartford, 65 Conn. App. 265, 276, cert. denied, 258 Conn. 926
(2001).
OPM is, of course, free to suggest an amendment of the state personnel code to the General Assembly. That is precisely how the federal government dealt with a similar problem of interpretation. In the Annual and Sick Leave Act of 1951, each civil service employee was allotted a portion of a "day" for vacation leave for any full biweekly pay period worked by the employee. In 1982, Congress amended the Annual and Sick Leave Act to resolve the issue of what a "day" meant for those on "compressed schedules." The Court of Appeals, in Contreras v. UnitedStates, 215 F.3d 1267 (Fed. Cir. 2000), discussed the reason for the 1982 amendment:
 That scheme [of the original act] works fine for employees on a regular schedule of 10 days of eight hours during each two-week pay period. The scheme falters, however, for employees who work abnormal schedules: [The original act] does not clearly set forth what constitutes a "day" for those employees.
 For . . . employees on flexible and compressed schedules, Congress has recognized and addressed that problem. In 1982, Congress amended the [original act] to define the term "day," as applied to employees on flexible or compressed schedules, to be eight hours. See 5 U.S.C. § 6129. As a result, employees who work, for example, four 10-hour shifts per week accrue the same number of hours of annual leave in each biweekly pay period as employees who work five eight-hour shifts per week.
Id., 1269.
Absent such a statutory adjustment to the State Personnel Act, Osten was entitled to her three personal days and holidays without having two hours charged against her vacation time. For that reason, the plaintiff's appeal is dismissed.
Henry S. Cohn, Judge