ADMINISTRATIVE AND RESIDUAL EMPLOYEES
UNION, LOCAL 4200, AFT/CSFT, AFL-CIO *v.*
STATE OF CONNECTICUT
(AC 22774)

Foti, Dranginis and Freedman, Js.

Argued February 10—officially released June 17, 2003

*James C. Ferguson,* for the appellant (plaintiff).

*Thomas P. Clifford III,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (defendant).

FREEDMAN, J. The plaintiff, the Administrative and Residual Employees Union, Local 4200, AFT/CSFT, AFL-CIO (union), appeals from the judgment of the trial court, granting the motion of the defendant state of Connecticut to dismiss this declaratory judgment action. The union argues that the court improperly granted the state's motion to dismiss based on lack of subject matter jurisdiction because of the union's failure to file an application to vacate, modify or correct an arbitration award pursuant to General Statutes §§ 52-418[1] and 52-419.[2] We disagree with the union and, accordingly, affirm the judgment of the trial court.

The following facts are not in dispute. Prior to this action, the union and the state had entered into a collective bargaining agreement that governed, inter alia, the duration of the standard workweek and accrual of paid vacation leave. The parties' agreement later was modified to allow a phased increase in the workweek from thirty five hours to forty hours between 1995 and 1998.

---

[1] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[2] General Statutes § 52-419 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court . . . shall make an order modifying or correcting the award if it finds any of the following defects: (1) If there has been an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award; (2) if the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted; or (3) if the award is imperfect in matter of form not affecting the merits of the controversy."

On July 28, 1998, the union filed a grievance contesting the state's calculation of vacation time based on hours rather than on whole days as required by the agreement. By decision dated September 1, 2000, an arbitrator concluded that the state had violated the agreement by its treatment of past leave accruals. The arbitrator held that the grievants were entitled to the number of days previously earned, despite an increase in the number of hours in their standard workday. The arbitrator held, however, that this entitlement went back only as far as July 1, 1998.

The union then filed the present declaratory judgment action, requesting that the court order the state to calculate the vacation accruals on a daily basis rather than on an hourly basis for periods prior to July 1, 1998. The court granted the state's motion to dismiss on the ground that the union had failed to file a timely application to vacate the decision of the arbitrator. The court concluded, on the basis of that failure, that it lacked jurisdiction over the declaratory judgment action. The union then filed the present appeal.

"We first set forth our standard of review governing an appeal from a judgment granting a motion to dismiss on the ground of a lack of subject matter jurisdiction. A motion to dismiss properly attacks the jurisdiction of the court, essentially asserting that the plaintiff *cannot* as a matter of law and fact state a cause of action that should be heard by the court. . . . A court deciding a motion to dismiss must determine not the merits of the claim or even its legal sufficiency, but rather, whether the claim is one that the court has jurisdiction to hear and decide. . . . Our Supreme Court has determined that when ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader.

. . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Bailey* v. *Medical Examining Board for State Employee Disability Retirement,* 75 Conn. App. 215, 219, 815 A.2d 281 (2003).

The parties in the present case submitted the following issue to arbitration: "Did the State violate Article 4, Article 18, Article 19, Article 40, Article 41, Article 42, Article 43 or Article 38 Section Nine of the P-5 collective bargaining contract by the treatment of past leave accruals? If so, what shall the remedy be consistent with the contract?" In his award, the arbitrator stated: "The state violated the collective bargaining agreement by its treatment of past leave accruals. The grievants are entitled to the number of days of leave previously earned, despite an increase in the number of hours in their standard workday. As more fully described [in the arbitrator's decision], such entitlement shall only go back to July 1, 1998, as a result of this award."[3] The union was successful, therefore, in its claim that the state had violated the collective bargaining agreement by converting past leave accruals to hours rather than days. The arbitrator, however, limited

---

[3] In his decision, the arbitrator stated: "Under article fifteen, § 9 (3), of the contract, the arbitrator does not have the power to 'impose any remedy or right of relief for any period of time prior to the effective date of the agreement, nor to grant pay retroactively for more than thirty (30) calendar days prior to the date a grievance was submitted at step one.' In this case, the grievance was filed on July 28, 1998. The '30 day' provision stated in article fifteen, § 9 (3), would normally allow the remedy to go back to a date prior to July 1. However, in the instant case, the remedy may only go back to July 1, 1998, due to the fact that the underlying grievance in this matter was found timely based upon a continuing violation theory, and the 'trigger' for that 'continuing violation' was the implementation of the 1998 phase of the increased workday."

the entitlement to the award to July 1, 1998, and did not order relief retroactive to 1995, 1996 and 1997.[4]

The union did not file an application to vacate or to modify the award. Rather, it brought the present action seeking a "declaratory judgment determining that the action of the Defendant in calculating vacation leave accrual based upon hours rather than days and thereby diminishing members of the Plaintiff's bargaining unit vacation banks is illegal and contrary to Connecticut General [Statutes] § 5-250 and the Plaintiff's Collective Bargaining Agreement." The union further sought an order of the court requiring the state to calculate properly the vacation accruals of its members on a daily basis rather than on an hourly basis.

The union argues on appeal that the court improperly determined that it lacked subject matter jurisdiction to address the declaratory judgment action. The union contends that it is not seeking a review of the arbitration award pursuant to §§ 52-418 or 52-419 because it agrees with the arbitration award insofar as it construes the rights and responsibilities of the parties pursuant to the agreement. The union argues that the complaint sought, not a review of the arbitrator's decision, but a determination of whether the state's action in determining vacation and sick leave accrual, on the basis of hours rather

---

[4] In his decision dated November 3, 1999, on the question of whether the union's grievance was arbitrable, the arbitrator stated: "In this case, article fifteen, § 5, states in part [that] '[a] grievance shall be deemed waived unless submitted at Step 1 within thirty (30) days from the date of the cause of the grievance or within thirty (30) days from the date the grievant or any union representative or steward knew or through reasonable diligence should have known of the cause of the grievance.' There is no dispute in this case that the union agreed to the phased in lengthening of the workweek. In addition, the evidence indicates that through a series of communications, including a June 12, 1995 memorandum, the union was informed by the state of the method to be used in calculating previously accrued vacation. Thus, upon a strict reading of article fifteen, § 5, the union had thirty days from on or about June or July, 1995, to file a grievance."

than on the basis of days, was illegal and contrary to General Statutes §§ 5-247[5] and 5-250.[6] The union contends that pursuant to those statutes, as interpreted by our Supreme Court in *Nagy* v. *Employees' Review Board*, 249 Conn. 693, 735 A.2d 297 (1999), an employee who earns one day of sick or vacation leave is entitled to the use of one day of sick or vacation leave, regardless of the lengthening of the standard workweek.[7] The

[5] General Statutes § 5-247 (a) provides: "Each appointing authority shall grant, on account of illness or injury, to each full-time employee in a permanent position in the state service who has furnished satisfactory proof of such illness or injury, such sick leave with pay as has accrued to his credit at the rate of one and one-quarter working days for each completed calendar month of continuous full-time service which may be computed on an hourly basis. Hourly computation of sick leave shall not diminish benefit entitlement. On or before October 1, 1980, the Commissioner of Administrative Services shall adopt regulations, in accordance with chapter 54, concerning the accrual, prorating and granting of sick leave with pay to other employees in the state service and extending sick leave with pay or with part pay for longer periods to full-time permanent employees disabled through illness or injury. Each such employee who retires under the provisions of chapter 66 shall be compensated, effective as of the date of his retirement, at the rate of one-fourth of such employee's salary for sick leave accrued to his credit as of his last day on the active payroll up to a maximum payment equivalent to sixty days' pay. Such payment for accumulated sick leave shall not be included in computing retirement income and shall be charged by the State Comptroller to the department, agency or institution in which the employee worked."

[6] General Statutes § 5-250 (a) provides: "Each appointing authority shall grant to each full-time employee in a permanent position in the state service, who has worked at least one full calendar year, an annual vacation with pay of twenty-one consecutive calendar days or its equivalent. Each such employee who has completed twenty years of service shall be entitled to one day for each additional year up to twenty-five years of service, and each such employee with twenty-five or more years of service shall be entitled to not more than twenty days' vacation, subject to regulations issued by the Commissioner of Administrative Services. The Commissioner of Administrative Services may adopt regulations, in accordance with the provisions of chapter 54, concerning the accrual, prorating and granting of vacation leave with pay as required. Computation of such vacation leave may be made on an hourly basis. Hourly computation of vacation leave shall not diminish benefit entitlement."

[7] In *Nagy* v. *Employees' Review Board*, supra, 249 Conn. 704–705, our Supreme Court held that the hourly calculation of sick and vacation leave authorized by General Statutes §§ 5-247 and 5-250 "may not operate to reduce

union argues that the state's action in providing leave, not in conformance with §§ 5-247 and 5-250, is an action clearly in excess of what the legislature authorized and is ultra vires as defined by our Supreme Court in *Nagy.* Finally, the union contends that it exhausted its administrative remedies and could obtain no further relief through applications to vacate, modify or correct the award pursuant to §§ 52-418 and 52-419.

The state essentially posits three arguments in response to the union's claims, namely, that the union is not entitled to relief because (1) this action is barred by the doctrine of sovereign immunity, (2) the union failed to file an application to vacate, modify or correct the arbitration award, and (3) the union failed to grieve the state's calculation of past leave accruals for 1995, 1996 and 1997 in a timely manner. We conclude, as did the court, that because the union failed to file an application to vacate, modify or correct the arbitration award, pursuant to §§ 52-418 and 52-419, the court was without jurisdiction over the matter. The court, therefore, properly granted the state's motion to dismiss this action for lack of subject matter jurisdiction.

"We have consistently stated that arbitration is the favored means of settling differences and arbitration awards are generally upheld unless an award clearly

the total number of days of sick and vacation leave that an employee has earned. Consequently, §§ 5-247 and 5-250 entitle the [employees] to the number of *days* of sick and vacation leave previously earned, despite an increase in the number of hours in their standard working day. Therefore, pursuant to §§ 5-247 and 5-250, an employee who earns one day of sick or vacation leave is entitled to utilize one day of sick or vacation leave regardless of any lengthening of the standard workday." (Emphasis in original.)

As correctly pointed out by the state, however, there was no jurisdictional issue in *Nagy.* The plaintiffs in that case appealed to the employees' review board from the decision of the commissioner of the department of administrative services, who had denied their appeal. The plaintiffs then filed an administrative appeal from the board's decision to the Superior Court pursuant to General Statutes § 4-183.

falls within the proscriptions of § 52-418 of the General Statutes. . . . A challenge of the arbitrator's authority is limited to a comparison of the award to the submission." (Citations omitted; internal quotation marks omitted.) *State* v. *AFSCME, Council 4, Local 387, AFL-CIO*, 252 Conn. 467, 473, 747 A.2d 480 (2000).

"In spite of the general rule that challenges to an arbitrator's authority are limited to a comparison of the award to the submission, an additional challenge exists under § 52-418 (a) (4) when the award rendered is claimed to be in contravention of public policy. . . . This challenge is premised on the fact that the parties cannot expect an arbitration award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. . . . When a challenge to the arbitrator's authority is made on public policy grounds, however, the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award." (Citations omitted; internal quotation marks omitted.) Id., 474–75.

The challenge raised by the union is that the state has acted in violation of §§ 5-247 and 5-250 by calculating vacation leave accrual on the basis of hours rather than on the basis of days, thus providing employees with less than that to which they are entitled by statute. We interpret that claim as one raising a public policy challenge to the legality of the award; as such, the union could have filed an application to vacate the arbitration award on public policy grounds pursuant to § 52-418.[8]

---

[8] The union did raise such a claim at arbitration. The arbitration award states in relevant part: "Finally, the union argues that the 'state's claim violates the public policy obligations of General Statutes § 52-418,' and therefore 'it would violate public policy for the arbitrator to conclude that even though the state never validly superseded General Statutes §§ 5-247 or 5-250, that the employee accrual banks should nevertheless remain unadjusted.'"

Apparently satisfied, however, with the decision of the arbitrator with regard to the accruals for 1998, the union opted not to pursue that avenue to obtain relief for the years 1995, 1996 and 1997. To do so potentially would have jeopardized its partial victory with regard to the 1998 accruals. In light of the foregoing, we conclude that the union failed to exhaust the specific statutory procedures established for obtaining review of arbitration awards. See *Hunt* v. *Prior*, 236 Conn. 421, 431–32, 673 A.2d 514 (1996).

Because the union failed to seek relief pursuant to §§ 52-418 and 52-419, the court properly dismissed the action on the ground of lack of subject matter jurisdiction.[9]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] We note that even if the union had sought relief pursuant to General Statutes §§ 52-418 and 52-419, the record supports the state's argument that the union has waived its claim for retroactive relief by failing to grieve the accrual issue for 1995, 1996 and 1997. The failure to grieve that issue also implicates the exhaustion doctrine and would have, in itself, provided a basis for dismissal for lack of subject matter jurisdiction. See *Hunt* v. *Prior*, 236 Conn. 431–32.