AVIS RENT-A-CAR SYSTEM, INC. *v.* CROWN HIGH
CORPORATION

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued November 13—decided December 19, 1973

*Stephen I. Traub,* for the appellant (defendant).

*Thomas B. Wilson,* for the appellee (plaintiff).

BOGDANSKI, J.   The plaintiff, Avis Rent-A-Car System, Inc., brought this action in the Court of Common Pleas to enjoin the defendant, Crown High Corporation, from continuing to operate as an Avis licensee in New London, Groton, Clinton and Madison, Connecticut.  Both parties moved for summary judgment.  After argument on those motions and while they were under consideration by the court, the defendant filed an answer and counterclaim and moved for a default for failure to plead and for a transfer to the Superior Court.  The motions were denied by the court.  From the action of the court in granting the motion for summary judgment for the plaintiff and the judgment rendered thereon, the defendant has appealed to this court.

The defendant first became an Avis licensee on January 1, 1961.  On November 1, 1962, and on April 1, 1964, the plaintiff granted licenses to the defendant to operate an automobile and truck rental business in the towns of New London, Groton, Clinton and Madison.  The license agreements provided that they were to be construed in accordance with the law of New York and contained the following termination clause:   "Either party hereto shall have the right to terminate this Agreement at any time after one year from the date hereof with or without cause, except that after . . . 5 years from the date Licensee first became an Avis System licensee, . . .

Licensor may terminate . . . only with cause . . . . Either party exercising its right to terminate . . . shall give to the other party hereto, at least 90 days prior to the January 1, or April 1 or July 1 or October 1 preceding or coinciding with such termination date, written notice of its election to do so." The agreements also contained the following provision: "Whenever, under the terms of this agreement, notice is required, the same shall be given in writing . . . personally or by depositing the same in the Registered Mail . . . . Any notice so mailed shall for all purposes be deemed to have been given to and received by the party for whom intended on the date said notice was so mailed."

On September 30, 1965, Avis mailed notices of termination of the 1962 and 1964 licenses to the defendant, to be effective midnight, December 31, 1965. The notices stated no cause for the termination except that "circumstances compel this."

Since the defendant continued to operate as an Avis licensee despite the notices of termination, the plaintiff commenced this action for an injunction on November 30, 1967. A substituted complaint was filed on October 15, 1968. On November 7, 1968, before any answer had been filed, the defendant moved for summary judgment, asserting "that there is no genuine issue as to any material fact," challenging the timeliness of the notices of termination. On December 10, 1968, the plaintiff also moved for summary judgment.

Both motions were argued on December 13, 1968, before *Cohen, J.,* who reserved decision and took possession of the file. Summary judgment for the plaintiff was granted by Judge Cohen on March 28, 1969. Earlier, on December 17, 1968, while the court

had the motions for summary judgment under consideration, the defendant had filed an answer and counterclaim. The counterclaim alleged that the plaintiff had filed a vexatious suit and had wrongfully interfered with the defendant's business, and sought an injunction and $500,000 damages. The plaintiff did not reply to the answer and counterclaim, and on August 1, 1969, the defendant filed a motion for default for failure to plead and a motion to transfer to the Superior Court. Both motions were denied by *Williams, J.*

The defendant presses three claims:[1] (1) that the trial court, in granting summary judgment, erred because the notices of termination were untimely; (2) that the court erred in granting summary judgment on the state of the pleadings; and (3) that the court erred in denying the defendant's motions regarding the counterclaim.

The licenses required that notice be given "at least 90 days prior to the January 1, or April 1 or July 1 or October 1 preceding or coinciding with" the date of termination. The notices of termination actually sent were made effective as of midnight, December 31, 1965. The defendant contends that this termination date did not coincide with January 1, 1966, and that the notices therefore should have been sent at least ninety days prior to October 1, 1965, the preceding quarterly date. The plaintiff argues that under New York law "midnight, December 31, 1965" does coincide with January 1, 1966, and that the notices, therefore, were timely.

The New York courts have not yet decided whether midnight is part of the following day. By statute,

---

[1] The defendant's other assignments of error have not been briefed and are treated as abandoned. *State* v. *Grayton,* 163 Conn. 104, 109, 302 A.2d 246; Maltbie, Conn. App. Proc. § 327.

New York has provided that "[a] calendar day includes the time from midnight to midnight." N.Y. General Construction Law § 19. The defendant argues that the word "from," when used with reference to a point of time, usually excludes the starting point, citing 86 C.J.S., Time, § 13 (3). Most courts which have considered the question, however, have stated that midnight is part of the following day. In *Chester* v. *Department of Civil Service,* 90 N.J. Super. 176, 216 A.2d 611, for example, the court said (p. 179) that "[t]echnically speaking, the ending of July 31, 1964 and the beginning of August 1, 1964 occurred at the same instant." See also *Benson* v. *Adams,* 69 Ind. 353, 354; *Loughran* v. *Jersey City,* 86 N.J.L. 442, 443, 92 A. 55.

The defendant relies on *Crowther* v. *Avis Rent-A-Car System, Inc.,* 284 F. Sup. 668 (W.D. Wash.), which involved an Avis notice of a license termination "effective as of midnight, March 31, 1968," and a termination clause analogous to the one now before us. The court said (p. 670) that, assuming "that a given midnight can be considered a point in two different days [referring to *Chester* v. *Department of Civil Service,* 90 N.J. Super. 176, 216 A.2d 611,] . . . Avis nevertheless elected by the wording of its notice of termination to treat midnight as a point in March 31, 1968, rather than as a point in April 1, 1968, and will not now be heard to urge a contrary construction." The court relied on the familiar principle of construction that doubts arising from ambiguity of language are resolved against the writer, in this case Avis.

We cannot agree with this reasoning. Midnight is a point in time and not a period of time. The defendant was not required by the notices it received

to cease doing business as an Avis licensee at any measurable time before January 1, 1966; and had the termination been made effective *after* midnight, December 31, 1965, the period of notice would not have been one iota longer. Midnight is a precisely defined point of time, and since it is defined as being shared by two days by the New York statute, we do not see why the plaintiff must be said to have elected to treat it as a moment contained in only one. We find no ambiguity in the language used in the notices.

The defendant further asserts that because it had been an Avis system licensee since January 1, 1961, Avis cannot terminate its licenses without cause on January 1, 1966, because the termination clause provides that "after 5 years from the date Licensee first became an Avis System licensee, . . . Licensor may terminate . . . only with cause." Section 20 of the New York General Construction Law provides that "[t]he day from which any specified period of time is reckoned shall be excluded in making the reckoning." This means that Avis had until January 2, 1966, to terminate without cause. See, e.g., *Union Mutual Life Ins. Co.* v. *Kevie,* 17 App. Div. 2d 109, 232 N.Y.S.2d 678, aff'd, 13 N.Y.2d 971, 194 N.E.2d 686, in which an insurance policy issued on August 16, 1957, containing a provision that it would become incontestable after two years, was held contestable on August 16, 1959.

We conclude that under New York law "midnight, December 31, 1965," coincided with January 1, 1966, and that the notices were timely.

The defendant next claims that the judgment cannot stand because the defendant's answer, filed after the hearing on the motions for summary judgment,

raised triable issues of fact. Practice Book § 298 permitted a party to move for summary judgment only after an answer had been filed.[2] It is a well-established principle that a party will be prevented from going to a hearing on the merits "and accepting the result if favorable, but if otherwise taking advantage of a technical difficulty which he knew of or should have known of from the beginning." *Post* v. *Williams,* 33 Conn. 147, 153. When both parties joined in submitting the case to the court for a summary determination before the filing of the answer, they necessarily agreed to let the court decide the merits of their respective motions when a favorable decision in either motion would terminate the case by the entry of a judgment. The defendant, therefore, cannot now complain of the irregular procedure induced and acquiesced in by the parties themselves. *Post* v. *Williams,* supra; cf. Practice Book § 75 .

Furthermore, the trial court's failure to follow the provisions of Practice Book § 306 (subsequently repealed) cannot now be taken advantage of by the defendant to invalidate the summary judgment proceeding. The purpose of § 306 was to assure the parties a full hearing on the questions of law raised. *Perri* v. *Cioffi,* 141 Conn. 675, 680, 109 A.2d 355. In this case a full hearing was had without objection or a request for postponement by the defendant.

The defendant's final claim is that the court erred in denying its motion for default and its motion to transfer. A counterclaim is properly filed in the answer. Practice Book § 124. A counterclaim which

[2] Section 298 has since been amended, and now provides that a motion for summary judgment must await the closing of the pleadings.

is not filed until after a motion for summary judgment is, therefore, untimely. Practice Book § 298. Anyone wishing to file an untimely counterclaim seeking damages beyond the jurisdiction of the court must first obtain the court's permission. In this case the defendant never obtained such permission, nor did it obtain the plaintiff's written consent to a late filing. The counterclaim was, therefore, not before the court, and the motions for transfer and default were properly denied.

There is no error.

In this opinion the other judges concurred.