## SECRETARY OF THE OFFICE OF POLICY AND MANAGEMENT *v.* EMPLOYEES' REVIEW BOARD ET AL.
### (SC 16806)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued April 16, 2003—officially released January 6, 2004

*Richard T. Sponzo,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Thomas P. Clifford III,* assistant attorney general, for the appellant (plaintiff).

*Robert J. Krzys,* for the appellee (defendant Catherine Osten).

PALMER, J. The defendant Catherine Osten[1] is a permanent full-time state employee working a nonstandard ten hour workday[2] but a standard forty hour work week.[3] The sole issue raised by this appeal is whether, pursuant to General Statutes §§ 5-250 (c)[4] and 5-254 (a),[5] the trial court properly concluded that the defendant is entitled to have each of her fixed number of personal leave days and holidays credited, on a day-for-day basis, against her entire nonstandard ten hour workday, or whether, under those statutory provisions, each such personal leave day and holiday represents only eight hours of leave time in accordance with the standard

---

[1] The named defendant, the employees' review board (board), also is a party to this action. Beyond certifying the administrative record, however, the board has declined to take an active role in the case. Therefore, for convenience, all subsequent references to the defendant are to Catherine Osten.

[2] As we explain more fully hereinafter, when this action first was initiated by the defendant, she was working a nonstandard eight and one-half hour workday. She since has been assigned to work a ten hour day.

[3] Section 5-238-1 of the Regulations of Connecticut State Agencies sets the standard hours of work at seven hours. In 1995, however, by directive of the department of administrative services, the standard workday gradually was increased to eight hours. *Nagy* v. *Employees' Review Board*, 249 Conn. 693, 696 n.3, 697, 735 A.2d 297 (1999). The standard work week currently is forty hours.

[4] General Statutes § 5-250 (c) provides: "In addition to annual vacation, each appointing authority shall grant to each full-time permanent employee in the state service three days of personal leave of absence with pay in each calendar year. Personal leave of absence shall be for the purpose of conducting private affairs, including observance of religious holidays, and shall not be deducted from vacation or sick leave credits. Personal leave of absence days not taken in a calendar year shall not be accumulated."

[5] General Statutes § 5-254 (a) provides: "Each full-time permanent employee in the state service shall be granted time off with pay for any legal holiday. If a legal holiday falls on a Saturday, employees shall be granted equivalent time off on the Friday immediately preceding such Saturday or given another day off in lieu thereof. The Commissioner of Administrative Services may issue regulations governing the granting of holiday time to other employees in the state service, which regulations shall be approved by the Secretary of the Office of Policy and Management."

eight hour workday for state employees. On appeal, the plaintiff, the secretary of the office of policy and management, contends that, contrary to the conclusion of the trial court, §§ 5-250 (c) and 5-254 (a) require him to: (1) treat each personal leave day and holiday as representing eight hours of leave time in accordance with the standard workday; (2) award the defendant eight hours of credit toward her ten hour workday for each such personal leave day and holiday; and (3) deduct two hours from the defendant's vacation account to make up for the difference in hours between her workday and the eight hours of leave time to which the plaintiff claims the defendant statutorily is limited for each personal leave day and holiday. We reject the plaintiff's claim and, therefore, affirm the judgment of the trial court.

The record reflects the following undisputed facts and procedural history. The defendant has been employed by the department of correction (department) since August, 1988. Since May, 1994, she has held the position of lieutenant. When the defendant first was appointed a lieutenant, the department assigned her to work an eight and one-half hour day, with four days on and two days off, repeating every six weeks. In October, 2000, the department changed her schedule to a ten hour workday.[6] Throughout her employment as a lieutenant, the defendant's weekly schedule has averaged forty hours per week over a six or eight week period.

On March 13, 2000, the defendant filed a grievance with the personnel division of the department of administrative services (administrative services) claiming, inter alia, that, relying on the standard eight hour workday for state employees, the department improperly

---

[6] The record indicates that the defendant did not elect to work a nonstandard workday but, rather, was required to do so by the department.

was treating each of her personal leave days and holidays as representing eight hours of leave time and then deducting from the defendant's vacation account the difference between the number of hours in her nonstandard workday and the eight hours of credit to which the department claimed she was entitled for each such personal leave day and holiday.[7] The defendant contended that this practice violated § 5-250 (c) and that she was entitled to have each personal leave day and holiday credited against her nonstandard workday on a day-for-day basis. She therefore sought restoration to her vacation account of all the time that the department had deducted from that account in connection with her use of personal leave and holiday time.[8] On April 19, 2000, administrative services denied the defendant's grievance.

Thereafter, the defendant appealed from the denial of her grievance to the employees' review board (board). After a hearing, the board concluded that the depart-

---

[7] Thus, when the defendant was working a nonstandard eight and one-half hour workday and elected to take a personal leave day, the department treated the personal leave day as representing eight hours of leave time and, accordingly, awarded the defendant eight hours of credit toward her eight and one-half hour workday. The department then deducted one-half hour from the defendant's vacation leave account to make up for the difference between her eight and one-half hour workday and the eight hours of leave time to which the department deemed she was entitled, under § 5-250 (c), for each personal day. The department also employed this practice with respect to holiday leave time. Therefore, on a state holiday when the defendant otherwise would have been working, the department awarded the defendant eight hours of credit toward her eight and one-half hour workday, and then deducted one-half hour from her bank of vacation time to account for the difference between her workday and the eight hours of holiday leave for which she had been credited in accordance with the department's interpretation of § 5-254 (a).

[8] Although the defendant did not cite to § 5-254 (a) in her grievance complaint, she also sought restoration of any vacation time that had been deducted in connection with her use of holiday leave. The parties do not dispute that, for purposes of the issue presented by this appeal, §§ 5-250 (c) and 5-254 (a) should be construed in the same manner.

ment's practice violated § 5-250 (c). Specifically, the board determined that the practice deprived the defendant of vacation time to which she was entitled because § 5-250 (c) does not reflect an intent by the legislature to penalize in such a manner employees whose workdays exceed the standard eight hours. Accordingly, the board ordered the department to: (1) grant the defendant three full calendar days of personal leave annually and credit her vacation account for any time that had been deducted from that account because of her use of personal leave days; and (2) make similar adjustments to the defendant's vacation account for any hours debited from that account in connection with her use of holiday leave.

The plaintiff then appealed from the board's decision to the Superior Court pursuant to General Statutes § 4-183.[9] The trial court issued its decision dismissing the plaintiff's administrative appeal, concluding that the terms " 'day' " and " 'holiday' " as used in §§ 5-250 (c) and 5-254 (a), respectively, represent an entire " 'calendar day,' " rather than eight hours. Thus, the trial court determined that the department statutorily is required to apply each of the defendant's personal days and holidays against her nonstandard workday *on a day-for-day basis*, thereby barring any deduction from the defendant's vacation account because of her use of personal and holiday leave. The court also ordered the plaintiff to restore any time that had been deducted from her vacation account in connection with her use of leave pursuant to §§ 5-250 (c) and 5-254 (a). This appeal by the plaintiff followed.[10]

___

[9] General Statutes § 4-183 provides in relevant part: "(a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

[10] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The plaintiff claims that the trial court improperly concluded that the defendant is entitled to personal leave days and holidays on the basis of her nonstandard workday, rather than the standard eight hour day. Specifically, the plaintiff contends that construing §§ 5-250 (c) and 5-254 (a) to award leave on the basis of the standard eight hour workday is consistent with other statutory provisions addressing irregular work schedules. The plaintiff further contends that the trial court's construction of §§ 5-250 (c) and 5-254 (a) gives rise to inequitable and irrational results, in particular, bestowing on employees working a nonstandard workday a windfall of additional leave time as compared to similarly situated employees working a standard eight hour day. Therefore, according to the plaintiff, the only reasonable interpretation of the terms "day" and "holiday" is an eight hour day.

The defendant, on the other hand, contends that equating personal leave days and holidays with the standard eight hour workday is incompatible with the legislature's intent as expressed in the pertinent statutory language and history. She further contends that employees working nonstandard workdays would receive disparate treatment under the interpretation urged by the plaintiff because they would have less vacation time available to them than employees who work a standard eight hour day. Therefore, the defendant contends, the trial court properly construed "day" and "holiday" to mean a "calendar day." We agree with the trial court that §§ 5-250 (c) and 5-254 (a) require the plaintiff to apply the defendant's personal days and holidays on the basis of her nonstandard workday, without any deduction from the defendant's bank of vacation leave to account for the difference in hours between her workday and the standard eight hour workday.

We begin by setting forth the well established standard that governs our review of an administrative

agency's decision. "[A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." (Internal quotation marks omitted.) *Southern New England Telephone Co.* v. *Dept. of Public Utility Control*, 261 Conn. 1, 13, 803 A.2d 879 (2002). In the present case, there is no claim that the relevant statutory provisions previously have been subjected to judicial scrutiny or to a time-tested interpretation by the board. We, therefore, accord no deference to the board's interpretation of those provisions. As a result, our review is plenary because the plaintiff's claim involves a question of statutory construction. See, e.g., *Segal* v. *Segal*, 264 Conn. 498, 506, 823 A.2d 1208 (2003).

"The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) *State* v. *Courchesne*, 262 Conn. 537, 577, 816 A.2d 562 (2003).

With these principles in mind, we turn to the merits of the plaintiff's claim.

As with all issues of statutory construction, we begin with the pertinent statutory language. General Statutes § 5-250 (c) provides in relevant part: "In addition to annual vacation, each appointing authority shall grant to each full-time permanent employee in the state service *three days of personal leave of absence with pay* in each calendar year. Personal leave of absence shall be for the purpose of conducting private affairs, including observance of religious holidays, and shall not be deducted from vacation or sick leave credits. . . ." (Emphasis added.) General Statutes § 5-254 (a) provides in relevant part that "[e]ach full-time permanent employee in the state service shall be granted *time off with pay for any legal holiday.* . . ." (Emphasis added.)

As a preliminary matter, we reiterate that neither party contends that our construction of §§ 5-250 (c) and 5-254 (a) should differ on the basis of any purported distinction between a "day" of personal leave and a "holiday."[11] Indeed, as we discuss at greater length later in this opinion, the language of the two provisions and their legislative history reflect an interrelated purpose of providing time for the observance of certain holidays, including religious holidays.[12] See General Statutes § 5-250 (c) ("[p]ersonal leave of absence *shall be for the purpose of* conducting private affairs, including *obser-*

[11] See footnote 8 of this opinion.

[12] Sections §§ 5-250 and 5-254 were enacted pursuant to the State Personnel Act, Public Acts 1967, No. 657, in accordance with recommendations made to the legislature in a report by J. L. Jacobs and Company (Jacobs report). 12 S. Proc., Pt. 5, 1967 Sess., p. 2306, remarks of Senator John P. Janovic ("bill is the culmination of the Jacobs report"). The Jacobs report directly associates personal leave days and holidays, stating that "a personal leave allowance . . . is provided to all employees to cover religious holidays not observed officially by the state . . . ." J. L. Jacobs & Company, A Modern Personnel Management System for Connecticut (January, 1967) p. 25.

*vance of religious holidays*" [emphasis added]); General Statutes § 5-254 (a) (providing for time off with pay for legal holidays, including certain religious holidays).[13] Accordingly, for purposes of this appeal, we construe §§ 5-250 (c) and 5-254 (a) similarly with respect to the leave time granted therein. See *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 157, 788 A.2d 1158 (2002) (courts under duty, when reasonably possible, to construe related statutes harmoniously).

When one considers the statutory language, of particular significance is the phrase in § 5-250 (c) providing that, "[p]ersonal leave of absence . . . *shall not be deducted from vacation or sick leave credits. . . .*" (Emphasis added.) If the legislature intended that a "day" of personal leave means a calendar day, then the practice of deducting two hours of vacation time for every personal day the defendant takes—solely because her ten hour workday exceeds the standard eight hour workday—directly contravenes that statutory mandate. If, on the other hand, as the plaintiff contends, the legislature intended that a "day" of personal leave

---

[13] General Statutes § 1-4, which sets forth the designated state holidays, provides in relevant part: "In each year the first day of January (known as New Year's Day), the fifteenth day of January of each year prior to 1986, and commencing on the twentieth day of January in 1986, the first Monday occurring on or after January fifteenth (known as Martin Luther King Day), the twelfth day of February (known as Lincoln Day), the third Monday in February (known as Washington's Birthday), the last Monday in May (known as Memorial Day or Decoration Day), the fourth day of July (known as Independence Day), the first Monday in September (known as Labor Day), the second Monday in October (known as Columbus Day), the eleventh day of November (known as Veterans' Day) and the twenty-fifth day of December (known as Christmas) and any day appointed or recommended by the Governor of this state or the President of the United States as a day of thanksgiving, fasting or religious observance, shall each be a legal holiday, except that whenever any of such days which are not designated to occur on Monday, occurs upon a Sunday, the Monday next following such day shall be a legal holiday and whenever any of such days occurs upon a Saturday, the Friday immediately preceding such day shall be a legal holiday. . . ." The governor also has declared Good Friday and Thanksgiving day as legal holidays.

means a standard eight hour day, then the challenged practice does not violate § 5-250 (c). We turn, therefore, to the meaning of the terms "day" and "holiday" for purposes of §§ 5-250 (c) and 5-254 (a), respectively.

We first note that those terms are not defined in either § 5-250, § 5-254 or elsewhere in the State Personnel Act, General Statutes § 5-193 et seq. In the absence of a statutory definition, words and phrases in a statute are to be construed according to their common usage. General Statutes § 1-1 (a);[14] *State* v. *Sandoval*, 263 Conn. 524, 552, 821 A.2d 247 (2003). The dictionary defines "holiday" as: "a *day* on which one is exempt from one's usual labor or vocational activity . . . ." (Emphasis added.) Webster's Third New International Dictionary. A "day" is defined as: "the time of light or interval between one night and the next [or] . . . the period of the earth's rotation on its axis ordinarily divided into 24 hours . . . ." Id.

Consistent with these definitions, courts generally have construed the word "day," when left unqualified, to mean a calendar day. See, e.g., *The Pocket Veto Case*, 279 U.S. 655, 679, 49 S. Ct. 463, 73 L. Ed. 894 (1929) ("[t]he word 'days' when not qualified, means in ordinary and common usage calendar days"); *Booker* v. *Chief Engineer of the Fire Dept. of Woburn*, 324 Mass. 264, 266, 85 N.E.2d 766 (1949) ("the word 'day' means a calendar day"); *Kuznitsky* v. *Murphy*, 381 Ill. 182, 186, 44 N.E.2d 893 (1942) ("if the legislature had contemplated or intended any other or different day than the ordinary calendar day when they speak of 'portion of a day' they would have said so by appropriate lan-

---

[14] General Statutes § 1-1 (a) provides: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly."

guage").[15] "[A] calendar day is the space of time that elapses between two successive midnights." *Booker* v. *Chief Engineer of the Fire Dept. of Woburn*, supra, 266; accord *Avis Rent-A-Car System, Inc.* v. *Crown High Corp.*, 165 Conn. 608, 611–12, 345 A.2d 1 (1973) (noting that, "[b]y statute, New York has provided that '[a] calendar day includes the time from midnight to midnight' "). Indeed, administrative services defines the "customary work day" as lasting "from 12:01 a.m. to 12:01 a.m. the following day . . . ." Regs., Conn. State Agencies § 5-238-4. Therefore, the fact that the legislature did not qualify the term "day" for purposes of § 5-250 (c) suggests that a "day" of personal leave represents an entire twenty-four hour period for which a state employee elects not to work but, nonetheless, is paid.

When seeking to ascertain the proper construction of the words "day" and "holiday" as those terms are used in §§ 5-250 (c) and 5-254 (a), respectively, we also look to the legislative purpose underlying those statutory subsections. As noted previously, § 5-250 (c) expressly provides that "[p]ersonal leave of absence shall be *for the purpose of* conducting private affairs, including *observance of religious holidays . . . .*" (Emphasis added.) The grant of a day of leave for such a purpose suggests a full calendar day off from work because, as a general matter, the observance of a religious holiday requires the entire day, not just a portion of that day. Similarly, it is reasonable to conclude that the legislature, in granting paid leave for legal holidays, intended to exempt state employees from their usual duties for a full calendar day. See *Brennan* v. *Fairfield*, 255 Conn. 693, 700, 768 A.2d 433 (2001) ("[c]ertainly when the legislature declares a day to be a holiday, it means at least to free public officers from the obligation

---

[15] Cf. The Dorsey Brothers Orchestra, "What a Difference a Day Made," (1934) ("[w]hat a difference a day made, twenty-four little hours").

of keeping open their offices or attending to their duties on that day" [internal quotation marks omitted]).

Thus, on the basis of the language and purpose of §§ 5-250 (c) and 5-254 (a), we are persuaded that the legislature's use of the terms "day" and "holiday" in those provisions reflects its intent that employees shall be compensated for leave commensurate with their scheduled hours during the calendar day. Indeed, there is nothing in the related statutory scheme or legislative history of §§ 5-250 (c) or 5-254 (a) to suggest a contrary intent.[16]

The plaintiff's reliance on other statutory provisions related to irregular work schedules and average work weeks as indicating the legislature's intent that "day" and "holiday" mean a standard eight hour day is misplaced. The plaintiff first cites to General Statutes § 5-238,[17]

---

[16] We note that the plaintiff challenges the trial court's reliance on our decision in *Nagy* v. *Employees' Review Board*, 249 Conn. 693, 735 A.2d 297 (1999), and suggests that, to the extent that *Nagy* is relevant, it supports the plaintiff's interpretation of §§ 5-250 (c) and 5-254 (a). Although *Nagy* does not bear directly on the issue presented by this appeal, it is consistent with our conclusion that a "day" means a calendar day.

In *Nagy*, the issue was whether, under General Statutes §§ 5-247 and 5-250, the plaintiff state employees, who gradually had increased the length of their workday from seven to eight hours, were entitled to a full eight hour "day" of sick or vacation leave based on the then-standard workday of eight hours, or whether those statutory provisions entitled them only to seven hours of leave for each day they had earned at the time the standard workday was seven hours. Id., 695–96. The dispute arose because the statutes at issue in that case, in contrast to those at issue in the present case, permitted hourly computation of leave time. Id., 700. Nonetheless, we held in *Nagy* that the plaintiffs were entitled to a full "day" of leave, in accordance with the current eight hour workday. Id., 704–705. In so concluding, we rejected the contention of the defendant board that the relevant statutes granted leave in terms of *hours* rather than *days*. Id., 703–704. Thus, to the extent that *Nagy* is relevant to the issue presented by this appeal, it supports the trial court's conclusion that a "day" is a calendar day, that is, a full day, irrespective of the number of hours that an employee may have been scheduled to work on that day.

[17] General Statutes § 5-238 provides in relevant part: "The Commissioner of Administrative Services shall issue regulations for establishing and maintaining uniform and equitable hours of work required of all employees

which permits the commissioner of administrative services to designate a position as "unscheduled" when its work requirements cannot be met by a standard schedule, provided that, "over a period of not more than eight weeks, no employee serving in a position designated as unscheduled shall *average* more than five workdays and [forty] hours per week per period." (Emphasis added.) The plaintiff contends that, because § 5-238 permits the averaging of such irregular schedules based on the standard *work week*, which in turn translates to five standard eight hour *workdays*, § 5-238 evinces a legislative intent that employees working irregular hours and standard hours be treated the same.

Along a similar vein, the plaintiff cites to General Statutes §§ 5-245 and 5-246,[18] which address overtime and

in the Executive Department, which regulations shall be approved by the Secretary of the Office of Policy and Management. The number of hours any employee shall be required to be on duty each day or in any week or month shall be uniform for all whose positions are allocated to the same class . . . . Where work requirements cannot be met by the establishment of regular work schedules, the commissioner may designate positions or classes as unscheduled, provided, over a period of not more than eight weeks, no employee serving in a position designated as unscheduled shall average more than five workdays and thirty-five hours per week per period." The statutory reference to a thirty-five hour work week has been altered in the quotation in the preceding text of this opinion to be in accord with an administrative services directive to increase the standard workweek to forty hours. See footnote 3 of this opinion.

[18] General Statutes § 5-245 provides in relevant part: "(a) Any state employee who performs work authorized by his appointing authority for a period in addition to the hours of the employee's regular, established workweek shall receive compensation as follows: (1) For that portion of such additional time worked which when added to the employee's regular, established workweek does not exceed forty hours, the employee shall be compensated at an hourly rate based on his annual salary; (2) for that portion of such additional time worked which when added to the employee's regular, established workweek exceeds forty hours, the employee shall be compensated at a rate equal to one and one-half times an hourly rate based on his annual salary.

"(b) The provisions of this section shall not be applied with respect to any employee employed in (1) an executive, administrative or professional capacity as such terms may be defined and delimited from time to time by the Commissioner of Administrative Services, or (2) a position or class which

equivalent time off with pay for hours worked in addition to the "average" forty hour work week for certain state employees. The crux of the plaintiff's argument is that, because both of these provisions require that employees working irregular schedules be compensated on the basis of an "average" work week, the legislature similarly intended that, for purposes of §§ 5-250 and 5-254, employees working irregular, or nonstandard, daily schedules be treated the same as employees working a standard eight hour day.

We fail to see the correlation that the plaintiff seeks to draw between §§ 5-238, 5-245 and 5-246 and the issue

has been designated as unscheduled by the Commissioner of Administrative Services, or (3) a position the regular work schedule of which requires rotating shifts as approved by the Commissioner of Administrative Services and recorded in his office, which schedule shall not *average* more than five work days per week over a period of not more than eight weeks.

"(c) Any person serving in a position referred to in subdivision (2) or (3) of subsection (b) of this section who performs work authorized by his appointing authority for a period in addition to his *average* workweek shall receive compensation as follows: (1) For those hours worked in any one workweek which are additional to his regularly scheduled hours for such week and which, when added to the employee's *average* workweek, do not exceed forty hours, the employee shall be compensated at an hourly rate based on his annual salary; (2) for those hours worked in any one workweek which are additional to his regularly scheduled hours for such week and which, when added to the employee's *average* workweek, exceed forty hours, the employee shall be compensated at a rate equal to one and one-half times an hourly rate based on his annual salary, provided nothing in this section in conflict with section 5-246 shall be construed to apply to any member of the state police. . . ." (Emphasis added.)

General Statutes § 5-246 (a) (1) provides in relevant part: "Notwithstanding the provisions of any regulation issued under this chapter, no state policeman shall be required to be on active duty as such more than five days in any consecutive seven-day period except in case of emergency as determined by the Commissioner of Public Safety. Subject to the provisions of subsection (b) of section 5-245, compensation at a rate equal to one and one-half times an hourly rate based on his annual salary shall be made in the case of any member or officer of the state police force who performs work authorized by the Commissioner of Public Safety in addition to the hours of his regular workweek as established by said commissioner, provided the Commissioner of Public Safety shall establish no workweek which, including home-to-duty station and duty station-to-home time, exceeds an eight-week *average* of forty hours per week. . . ." (Emphasis added.)

presented by this case. The focus of each of those statutory sections is a standard forty hour *work week*; there is no indication that a standard workday has any particular significance insofar as those statutory provisions are concerned. Moreover, there is nothing in those provisions that suggests any relationship to the use and calculation of personal leave days and holidays under §§ 5-250 (c) and 5-254 (a). We are not persuaded, therefore, that §§ 5-238, 5-245 and 5-246 have any bearing on whether the legislature intended personal leave days and holidays to be credited on the basis of a calendar day or an eight hour day.

As the plaintiff contends, the State Personnel Act does evince the legislature's intent that similarly situated employees be treated equally, whenever reasonably possible. See General Statutes § 5-194 ("[t]his chapter shall be so construed and administered as to provide a uniform and equitable system of personnel administration of employees in the state service"); General Statutes § 5-238 ("The Commissioner of Administrative Services shall issue regulations for establishing and maintaining uniform and equitable hours of work required of all employees in the Executive Department . . . . The number of hours any employee shall be required to be on duty each day or in any week or month shall be uniform for all whose positions are allocated to the same class . . . ."). The plaintiff maintains that the trial court's construction of §§ 5-250 (c) and 5-254 (a) is contrary to this legislative goal. In particular, the plaintiff underscores the fact that, whenever the defendant uses a personal leave day or takes holiday leave, she is relieved of *ten hours of work* as a result of her non-standard workday, whereas her similarly situated colleague working a standard day is relieved only of *eight hours of work*. Consequently, by the end of the year, the defendant will have worked as many as thirty fewer

hours than her colleague,[19] without any commensurate reduction in the defendant's pay.[20] The plaintiff claims that this is a "bizarre" and inequitable result that counsels against our adoption of the trial court's construction.[21]

We are mindful, however, that inequities also would result if we were to adopt the plaintiff's construction of §§ 5-250 (c) and 5-254 (a). For example, pursuant to § 5-250 (a),[22] a full-time permanent employee who has

[19] It is true, of course, that, under the construction of §§ 5-250 (c) and 5-254 (a) adopted by the trial court, the defendant will work fewer total hours per year than her similarly situated colleague who works a standard eight hour day. Because, however, we do not know how many state holidays fall on days when the defendant otherwise would have been scheduled to work, we also do not know precisely how many fewer hours she would be required to work, on an annual basis, than her colleague with an eight hour workday. Hypothetically, though, if the defendant were to use all three of her personal leave days, *and* if every state holiday fell on a day when she otherwise was scheduled to work, the defendant would work an annual total of thirty fewer hours than her colleague, if, of course, her colleague also used all of her personal leave days and if each of the twelve state holidays fell on one of her colleague's regularly scheduled workdays, as well.

[20] The plaintiff also contends that, had the legislature intended to grant greater leave time to employees working nonstandard schedules, it knew how to express such an intent. Specifically, the plaintiff points to regulations governing holiday, vacation and sick leave time for part-time state employees. See Regs., Conn. State Agencies §§ 5-254-2 (c) (2), 5-247-2 (a) (2) and 5-250-2 (b). Without more, we do not see how the language of these *administrative regulations* supports the plaintiff's claim regarding the language used by the *legislature.* Moreover, although the commissioner of administrative services has established regulations that govern the award of leave to part-time state employees, the legislature has not conferred such authority upon the commissioner with respect to permanent full-time state employees. The regulations relied on by the plaintiff, therefore, are inapposite.

[21] The plaintiff also asserts that, under the trial court's construction, the result becomes that much more inequitable when considering its effect on vacation and sick leave. As the plaintiff concedes, however, neither of those benefits is implicated in this appeal.

[22] General Statutes § 5-250 (a) provides in relevant part: "Each appointing authority shall grant to each full-time employee in a permanent position in the state service, who has worked at least one full calendar year, an annual vacation with pay of twenty-one consecutive calendar days or its equivalent. . . ."

worked a full calendar year is entitled to "an annual vacation with pay of twenty-one consecutive calendar days or its equivalent. . . ." For a person working a standard forty hour week, these twenty-one consecutive calendar days represent three work weeks, or 120 hours, of paid vacation time. Under the current practice, and applying the construction advocated by the plaintiff, two hours are deducted from the defendant's vacation account for each personal leave day that she takes and for each state holiday on which she otherwise would have been assigned to work. The sum total of this reduction in vacation leave is not insignificant. Because the defendant is entitled to three days of personal leave, and the state has designated twelve days as state holidays; see footnote 13 of this opinion; the defendant could have as many as thirty hours deducted from her vacation account each year.[23] Thus, although § 5-250 (a) entitles the defendant to the same 120 hours of vacation time as similarly situated employees who work a standard eight hour day, the construction of §§ 5-250 (c) and 5-254 (a) advocated by the plaintiff would result in the defendant having as many as thirty fewer hours of disposable vacation time than employees working an eight hour day.[24]

The construction urged by the plaintiff gives rise to another, albeit related, inequity with respect to the defendant's use of holiday leave. Under that construction, the defendant would be entitled to eight hours of holiday leave time for each holiday that falls on a day when she otherwise would have been working. Because

---

[23] See footnote 19 of this opinion.

[24] Indeed, because vacation time, unlike personal leave time, may be accrued; see General Statutes § 5-250 (b); and has a monetary value; General Statutes § 5-252 ("[a]ny state employee leaving state service shall receive a lump sum payment for accrued vacation time"); an employee who works a standard eight hour day not only has greater choice in *when* to take leave, she also has the opportunity to convert her greater number of vacation leave hours into a greater monetary payout upon her departure from state service.

the defendant works a ten hour day, however, two hours would be deducted from her vacation account to make up for the difference between her ten hour workday and the eight hours of holiday leave to which the plaintiff claims the defendant statutorily is limited. Those two hours would be deducted from the defendant's vacation account, however, even though she *cannot* work that day *because* it has been deemed a state holiday.[25] To deduct two hours from the defendant's vacation account under those circumstances is neither equitable nor consistent with the purpose of holiday leave, namely, to compensate state employees fully for holidays on which our state offices and facilities, with but a few exceptions, are closed.

Although we recognize that the inequity that flows from the trial court's construction of §§ 5-250 (c) and 5-254 (a) is not insignificant, neither is the unfairness that would result if we were to adopt the plaintiff's interpretation of those provisions. Thus, we must choose from two competing interpretations, each of which gives rise to inequities of similar magnitude. In such circumstances, the parties' equitable arguments cannot serve as the basis for our resolution of the question presented.

We are persuaded that the legislature's use of the words "day" and "holiday" in §§ 5-250 (c) and 5-254 (a), respectively, without any limiting language and read in light of those terms' ordinary meanings, indicates that the legislature intended for employees to receive personal and holiday leave credit on the basis of a calendar

---

[25] We do not mean to suggest, of course, that the defendant may not work on state holidays if she is assigned to do so in accordance with the terms of her employment. Indeed, as a correctional supervisor, it may be that the defendant does, in fact, work on one or more such holidays each year. Generally, however, state employees do not, and cannot, work on state holidays, unless authorized to do so, because the vast majority of state offices and facilities are closed to them, as well as to the public, on such days.

day.[26] Moreover, neither the purpose nor the legislative history of §§ 5-250 (c) and 5-254 (a) suggests that the legislature intended the terms "day" and "holiday" to represent an eight hour workday. "We will not impute to the legislature an intent to limit [a] term where such intent does not otherwise appear in the language of the statute." (Internal quotation marks omitted.) *State* v. *Love*, 246 Conn. 402, 412, 717 A.2d 670 (1998). Despite our recognition that the construction we adopt today will result in disparate treatment of employees working a standard eight hour day and those working a nonstandard day in excess of eight hours, "[i]t is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is the function of the legislature." (Internal quotation marks omitted.) *State* v. *Luurtsema*, 262 Conn. 179, 202, 811 A.2d 223 (2002). Of course, the legislature is free to decide that, for purposes of such leave benefits, a day equates to an eight hour day. Indeed, Congress has done so. See 5 U.S.C. § 6129 ("[f]or purposes of administering sections 6303(a), 6304, 6307(a) and (d), 6323, 6326, 6327, and 8339(m) of this title, in the case of an employee who is in any program under this subchapter, references to a day or workday

---

[26] The plaintiff contends that an interpretation of "day" as a calendar day has "no meaning in measuring" these benefits and that this same interpretation of "holiday" is "wholly divorced from the context of calculating benefit entitlement . . . ." This claim lacks merit. Although "[i]t is not our practice to construe a statute . . . in a way that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve"; (internal quotation marks omitted) *State* v. *Reynolds*, 264 Conn. 1, 33, 836 A.2d 224 (2003); the plaintiff has failed to explain, and we cannot ascertain, how this interpretation renders impractical the computation of personal and holiday leave benefits.

The plaintiff also suggests that, if we construe a "day" to mean a calendar day, other absurd results would follow under various scenarios in which employees worked odd schedules, such as different numbers of irregular hours each day. Although we acknowledge the theoretical possibility of such anomalous results, we decline to construe §§ 5-250 (c) and 5-254 (a), which apply to large numbers of state employees, on the basis of a few hypothetical, and seemingly remote, fact patterns.

[or to multiples or parts thereof] contained in such sections shall be considered to be references to 8 hours [or to the respective multiples or parts thereof]"). We, however, cannot do so by judicial fiat.

In summary, the grant of personal leave days and holidays under §§ 5-250 (c) and 5-254 (a), respectively, is intended to compensate state employees on the basis of a calendar day. Section 5-250 (c) explicitly provides that personal days are "[i]n addition to annual vacation" and "shall not be deducted from vacation or sick leave credits." Accordingly, the practice of deducting time from the defendant's accrued vacation credits on account of her use of personal and holiday leave, solely because she works in excess of an eight hour day, violates that mandate of § 5-250 (c). Therefore, the trial court properly concluded that the practice must be discontinued and that the defendant is entitled to restoration of any time deducted from her vacation account, because of her nonstandard workday, for her use of personal leave days and holidays pursuant to §§ 5-250 (c) and 5-254 (a).

The judgment is affirmed.

In this opinion BORDEN, KATZ and VERTEFEUILLE, Js., concurred.

ZARELLA, J., concurring. I concur in the result reached by the majority but disagree with the majority's analysis. Following the approach to statutory interpretation adopted in *State* v. *Courchesne*, 262 Conn. 537, 577, 816 A.2d 562 (2003), the majority begins by examining the statutes and case law of other jurisdictions to determine the meaning of the terms "day" and "legal holiday" contained in General Statutes §§ 5-250 (c) and 5-254 (a), respectively. The majority then seeks to divine the legislative purpose underlying the statutory language by examining the related statutory scheme and legislative history. I would adopt a simpler approach.

As I have stated elsewhere, if the language of a statute is plain and unambiguous, as in the present case, we need look no farther for its meaning than the words of the statute itself, unless such an interpretation produces an absurd result. Id., 634 (*Zarella, J.*, dissenting). Only when the meaning of statutory language cannot be determined in this fashion should we consider the statutory scheme, the common-law principles governing the same subject matter and the statute's legislative history. Id. (*Zarella, J.*, dissenting). I therefore disagree with the majority's conclusion that §§ 5-250 (c) and 5-254 (a) should be construed similarly because the language and legislative history of the two provisions "reflect an interrelated purpose of providing time for the observance of certain holidays, including religious holidays." I also disagree with the majority's emphasis on the subjective intent of the legislature in addition to the pertinent statutory language.

I initially disagree that personal and holiday leave under §§ 5-250 (c) and 5-254 (a) should be interpreted similarly on the ground that both provisions "reflect an interrelated purpose of providing time for the observance of certain holidays, including religious holidays." General Statutes § 5-250 (c) expressly provides that personal leave "shall be for the purpose of conducting private affairs, including [but not limited to the] observance of religious holidays . . . ." General Statutes § 5-254 (a) provides "time off with pay for any legal holiday" without referring to the religious or secular character of the holiday. Accordingly, because the language of each statute is different, I would conduct a separate analysis of each provision under the applicable canons of statutory construction.

General Statutes § 5-254 (a) provides in relevant part: "Each full-time permanent employee in the state service shall be granted time off with pay for any legal holiday. . . ." As the majority correctly notes, there are no provi-

sions in the State Personnel Act[1] that define the term "legal holiday." The majority observes, therefore, that, in the absence of a statutory definition, we must construe the words and phrases of a statute according to their common usage. See General Statutes § 1-1 (a). The majority nevertheless proceeds directly to the statutes and case law of other jurisdictions in construing the meaning of the term.

I find such an analysis superfluous because the term "legal holiday" is generally understood to mean a full calendar day. In other words, a reasonable person simply would not interpret the statute to mean that state employees working a nonstandard ten hour day must report for two hours of work on Thanksgiving, Independence Day or any other day designated as a legal holiday if the employee's nonstandard workday happens to fall on the holiday. Indeed, such an interpretation would produce absurd results. Because most state offices are closed on legal holidays, employees reporting to work on a legal holiday might not be able to perform their usual duties, much less enter the building, in the absence of other employees. Accordingly, a construction of the term "legal holiday" to mean a full calendar day is both reasonable and consistent with the term's common usage.

General Statutes § 5-250 (c) provides in relevant part: "In addition to annual vacation, each appointing authority shall grant to each full-time permanent employee in the state service three days of personal leave of absence with pay in each calendar year. Personal leave of absence shall be for the purpose of conducting private affairs, including observance of religious holidays, and shall not be deducted from vacation or sick leave credits. . . ." Neither the statute nor the State Personnel

---

[1] General Statutes § 5-193 et seq.

Act contains a definition of the term "day" for purposes of calculating personal leave.

The majority observes that neither party has argued that this court's construction of the term "day" in § 5-250 (c) and the term "holiday" in § 5-254 (a) should differ on the basis of any purported distinction between a "day" of personal leave and a "holiday." Furthermore, it is a well settled canon of statutory construction that "the legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires us to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction. . . . In applying these principles, we are mindful that the legislature is presumed to have intended a just and rational result." (Citations omitted; internal quotation marks omitted.) *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 310–11, 819 A.2d 260 (2003).

Sections 5-250 (c) and 5-254 (a) are part of a single statutory scheme, namely, the State Personnel Act. In order to achieve a harmonious result, the two statutes must be construed so that both personal leave days and paid legal holidays refer to calendar days rather than standard eight hour workdays. Such an interpretation is reasonable and there is nothing in either statutory provision to suggest that a distinction should be made between them on that basis. Such an interpretation also is consistent with other provisions in the statutory scheme. See General Statutes § 5-250 (a) (each full-time employee shall be granted "an annual vacation with pay of twenty-one consecutive calendar days or its equivalent"). I believe that this is a more logical and legally defensible approach than that which the majority takes in construing the two provisions in a similar manner.

Finally, General Statutes § 5-250 (c) expressly provides that personal leave days shall be "[i]n addition to annual vacation" and that personal leave "shall not be deducted from vacation or sick leave credits." Consequently, under the plain language of the statute, hours taken for personal leave may not be deducted from an employee's vacation account. I thus reach the same result as the majority but via a more direct path.