******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICHAEL FERRARO *v.* RIDGEFIELD EUROPEAN
MOTORS, INC., ET AL.
(SC 19043)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.

*Argued February 24—officially released September 23, 2014*

*Elycia Solimene*, with whom, on the brief, was
*Sharon R. McLoughlin*, for the appellants (named
defendant et al.).

*Lucas D. Strunk*, for the appellees (defendant
AmGuard Insurance Company et al.).

*Jason K. Matthews*, for the appellees (defendant
American Alternative Insurance Company et al.).

*Opinion*

ESPINOSA, J. The issue we must resolve in this workers' compensation case is whether, pursuant to General Statutes § 31-299b,[1] interest can be assessed against a prior insurance company if such insurer agrees to its apportionment liability after formal proceedings have concluded, but before the Workers' Compensation Commissioner (commissioner) issues his findings and order. In the underlying workers' compensation case, the plaintiff, Michael Ferraro (claimant), sought compensation for hand, arm, and neck injuries that he sustained while employed with the defendant Ridgefield European Motors, Inc. (Ridgefield). The insurer for Ridgefield at the time the claimant filed his claim, the defendant AmGuard Insurance Company (AmGuard), entered into a voluntary agreement on the claim, and subsequently sought apportionment against Ridgefield's prior insurers, the defendant Republic-Franklin Insurance Company (Republic-Franklin) and the defendant American Alternative Insurance Company (American Alternative). American Alternative settled its apportionment claim prior to the commencement of formal proceedings before the Workers' Compensation Commission (commission), but Republic-Franklin did not agree to its apportionment liability until just before the close of evidence, after the third formal hearing. Thereafter, the commissioner issued his findings and orders, over the objection of Republic-Franklin, and ordered Republic-Franklin to pay interest pursuant to § 31-299b. Republic-Franklin appealed to the Workers' Compensation Review Board (board), which affirmed the finding of the commissioner. Republic-Franklin appealed,[2] arguing that interest should not have been assessed against it because: (1) the statutory requirements for ordering interest were not met; and (2) even if the statutory requirements were met, the interest order was not valid because it was not issued within a reasonable period of time after the issuance of the compensation award. We conclude that the plain and unambiguous language of § 31-299b permits an award of interest against a prior insurer if the apportionment claim has been submitted to a commissioner after the conclusion of formal hearings. We also conclude that Republic-Franklin failed to preserve its claim that the commissioner improperly awarded interest because the findings and orders were not issued within a reasonable period of time after the issuance of the compensation award. Accordingly, we affirm the decision of the board.

The record reveals the following undisputed facts and relevant procedural history. The claimant was employed by Ridgefield as a "heavy hit" motor vehicle mechanic from 1998 until 2003.[3] In November, 2001, he began experiencing tingling and numbness in his hands and arms. His primary care physician suspected carpal tunnel syndrome, and after a subsequent evaluation and

further diagnostic studies, another physician recommended that he undergo carpal tunnel decompression. The claimant consequently filed a workers' compensation claim alleging carpal tunnel syndrome caused by repetitive and cumulative trauma, with a date of injury of November 1, 2001 (carpal tunnel claim).

In early 2002, the claimant was referred to Alan S. Waitze, a neurosurgeon. After an initial consultation during which the claimant primarily complained of neck pain, arm pain and bilateral hand pain, and during which an MRI scan of the claimant was performed, Waitze informed the claimant that the MRI had revealed spinal stenosis[4] with resultant spinal compressions, and opined that his spinal problems were likely responsible for his arm and hand problems as well as his carpal tunnel syndrome. Accordingly, Waitze recommended that the claimant undergo a cervical discectomy, decompression and fusion, and that if the claimant continued to experience symptoms in his hands after the surgery, he should address the carpal tunnel syndrome. Following his evaluation by Waitze, the claimant filed a second workers' compensation claim, with an injury date of June 26, 2002, alleging injury to multiple body parts due to repetitive strain (cervical spine claim). The claimant and AmGuard entered into a voluntary agreement on the cervical spine and carpal tunnel claims, which was approved in June, 2004 (voluntary agreement).

AmGuard requested a formal hearing on its apportionment claim against Republic-Franklin and American Alternative for the cervical spine claim in August, 2009. Instead, a preformal hearing was held in September, 2009, during which AmGuard, Republic-Franklin and American Alternative agreed to proceed on the apportionment of the cervical spine claim. Following the preformal hearing, in a letter to AmGuard, dated September 25, 2009, American Alternative agreed to accept its apportionment share of 26.67 percent, based on its coverage dates.

The first formal hearing took place on November 16, 2009. At the start of the hearing, American Alternative stated on the record that it already had accepted its apportionment share of 26.67 percent, pending the outcome of the formal hearings, and that the agreement was without prejudice and could change. AmGuard relayed to the commissioner a stipulation regarding the coverage dates for the three insurers and then offered a number of exhibits with respect to the cervical spine claim. At the conclusion of the hearing, Republic-Franklin asked that both the carpal tunnel and cervical spine claims be heard, in the interest of judicial economy. AmGuard observed that although at the preformal hearing the parties had agreed to proceed solely on the cervical spine claim, it did not object to including the carpal tunnel claim since the commissioner had opened

both claims at the start of the hearing and AmGuard anticipated that the report for the physician who had performed the carpal tunnel surgeries would be completed by the next hearing date. American Alternative clarified that its acceptance of apportionment liability related to the cervical spine claim only and that it would evaluate whether to accept its apportionment share with respect to the carpal tunnel claim when it received the physician's report.

At the second formal hearing, which occurred on January 19, 2010, a witness for AmGuard testified and additional exhibits were submitted into evidence. After the testimony, American Alternative represented that it was in negotiations with AmGuard to resolve the carpal tunnel claim and that they hoped to resolve it prior to the closure of the record. AmGuard represented that it was not seeking apportionment against Republic-Franklin for the carpal tunnel claim and that it would not need to do so if AmGuard reached an agreement with American Alternative as to that claim.[5]

At the third formal hearing, held on September 27, 2010, the parties agreed that although the notice for the hearing did not so indicate, the issue to be addressed was apportionment liability. The parties then submitted the depositions of various physicians who had examined the claimant, as well as the claimant's deposition that had been taken by Republic-Franklin in the time between the second and third formal hearing, and the matter was set for a pro forma hearing date of October 29, 2010, for the filing of briefs and proposed findings.

After the third hearing, in a letter to the commissioner dated October 21, 2010, Republic-Franklin represented that it had agreed to accept the apportionment share requested by AmGuard, but that AmGuard still wished to seek interest pursuant to § 31-299b. Republic-Franklin maintained that an order from the commission would be moot and unnecessary, as it had agreed to the full requested percentage, but requested that if the commission determined that an order was necessary, the record should be reopened to allow for the presentment of additional evidence on the issue of interest. AmGuard responded to the commission by letter dated October 22, 2010, disputing Republic-Franklin's representation about the agreement and objecting to a reopening of the record. Specifically, AmGuard represented that Republic-Franklin had informed it on October 14, 2010, that Republic-Franklin would be willing to accept the requested apportionment share only if AmGuard waived any interest claims. AmGuard indicated that it was not willing to waive interest claims, in part, because of the extent of the proceedings. AmGuard stated that Republic-Franklin's October 21 letter to the commissioner was the first acknowledgment of its acceptance of apportionment liability, and was not communicated to AmGuard directly. Moreover, AmGuard contended,

Republic-Franklin's October 21 letter was a "blatant attempt to avoid the mandatory interest under § 31-299b" and the record did not need to be reopened because the mandatory interest claim was not a penalty provision.

Republic-Franklin subsequently informed the commissioner by letter dated October 22, 2010, that it had agreed to accept its 66.67 percent apportionment liability on the cervical spine claim and that it would issue payment once it had received an updated accounting. Moreover, Republic-Franklin maintained that AmGuard's claim that it was entitled to interest notwithstanding Republic-Franklin's agreement to its apportionment share raised a new issue, not addressed by the evidence presented at the formal hearings. Accordingly, Republic-Franklin again requested that the record be reopened.

By letter to the commissioner dated October 22, 2010, AmGuard responded to Republic-Franklin, stating that it would provide an updated accounting, and questioning the need for evidence in a case with mandatory interest. AmGuard contended that an order would need to be issued to memorialize the percentages of liability and establish the extent of interest owed. It further declared that although legal argument would be appropriate, absent an offer of relevant evidence that could not have been offered during the prior hearing, AmGuard would object to reopening the record. On October 28, 2010, the commission issued a notice of a formal hearing to address the apportionment of liability and interest issues that had been raised by Republic-Franklin and AmGuard. The hearing was held on December 1, 2010.

Following the hearing, the commissioner issued his findings. He found that because prior to the commencement of formal proceedings American Alternative had accepted its apportionment share of 26.67 percent, the sole purpose of the formal hearings was to establish Republic-Franklin's apportionment share of the cervical spine claim. The commissioner further found that after the conclusion of three hearings, but prior to the deadline for briefs and proposed findings, Republic-Franklin acknowledged responsibility for its apportionment share of 66.67 percent and reimbursed AmGuard. He also found that although AmGuard acknowledged that all parties had agreed on their respective apportionment percentages and AmGuard had been reimbursed, it sought interest from Republic-Franklin. The commissioner concluded that Republic-Franklin was responsible for 66.67 percent of the cervical spine claim, American Alternative was responsible for 26.67 percent of the cervical spine claim and AmGuard was responsible for 6.66 percent of the cervical spine claim. He further ordered that Republic-Franklin pay AmGuard interest.

Thereafter, Republic-Franklin filed a motion to correct the findings and order, which was granted in part, and a motion for articulation, which was denied. Republic-Franklin appealed the commissioner's findings and order, as well as the denials of its motions to correct and for articulation, to the board, which affirmed the decision of the commissioner. This appeal followed.

On appeal, Republic-Franklin challenges the order of interest on two bases. First, it argues that the commissioner's order of interest was improper because pursuant to § 31-299b, it is the determination of apportionment liability, rather than the commencement of formal proceedings, that authorizes the commissioner to award interest. Republic-Franklin argues that because all of the determinations that the commissioner was required to make were resolved through agreement by the parties, the statutory prerequisites had not been met, and the award of interest was improper.[6] Moreover, Republic-Franklin asserts that an award of interest that would be triggered only after the commencement of formal proceedings would create bad public policy because it would encourage current insurers to delay prosecution of apportionment claims to take advantage of a 12 percent interest rate. Second, even if this court concludes that the statutory prerequisites were satisfied, Republic-Franklin argues that the award of interest should be reversed because the lapse in time between the approval of the voluntary agreement between the claimant and AmGuard in 2004, and the commissioner's decision on the apportionment claim, which occurred in 2011, was not reasonable. Although acknowledging that § 31-299b does not envision a statute of limitations on apportionment claims, Republic-Franklin, nevertheless, maintains that the three year delay between the approval of the voluntary agreement in 2004, and AmGuard's initial claim for apportionment in 2007, and the two year delay between the first informal hearing in 2007, and the commencement of formal proceedings in 2009, is unreasonable and inconsistent with the board's implied understanding of the time that is necessary to present a claim for apportionment in a formal proceeding. We reject both claims advanced by Republic-Franklin and address each in turn.

"As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals. The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Stec* v. *Raymark Industries, Inc.*, 299 Conn. 346, 355, 10 A.3d 1 (2010). "[Moreover, it] is well established that [a]lthough not dispositive, we accord great weight to

the construction given to the workers' compensation statutes by the commissioner and review board. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." (Internal quotation marks omitted.) *Chambers* v. *Electric Boat Corp.*, 283 Conn. 840, 844, 930 A.2d 653 (2007). There has been no prior judicial or time-tested interpretation of the language at issue in the present case. Accordingly, our review is plenary. See *Secretary of the Office of Policy & Management* v. *Employees' Review Board*, 267 Conn. 255, 262, 837 A.2d 770 (2004).

I

We first address Republic-Franklin's claim that the commissioner failed to satisfy the statutory prerequisites of § 31-299b, thereby prohibiting an order of interest, because the agreement between Republic-Franklin and AmGuard rendered moot any need for a determination by the commissioner. On the basis of our interpretation of § 31-299b, we conclude that the award of interest against Republic-Franklin was proper. As we will explain, the apportionment statute clearly and unambiguously requires that the commissioner make findings after the evidence has been submitted to him after the conclusion of formal proceedings. Because Republic-Franklin does not dispute the commissioner's factual findings that the purpose of the formal hearings was to decide only the apportionment liability of Republic-Franklin, and the parties had submitted all of the evidence to the commissioner for his consideration, the commissioner properly made findings and ordered interest against Republic-Franklin.

This claim presents an issue of statutory interpretation, over which we exercise plenary review. See *Secretary of the Office of Policy & Management* v. *Employees' Review Board*, supra, 267 Conn. 262. "When interpreting a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. General Statutes § 1-2z. . . . However, [w]hen a statute is not plain and unambiguous, we also

look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . A statute is ambiguous if, when read in context, it is susceptible to more than one reasonable interpretation." (Citation omitted; internal quotation marks omitted.) *Tuxis Ohr's Fuel, Inc.* v. *Administrator, Unemployment Compensation Act*, 309 Conn. 412, 421–22, 72 A.3d 13 (2013).

As required by § 1-2z, we begin with the statutory language. Section 31-299b provides in relevant part: "If an employee suffers an injury or disease for which compensation is found by the commissioner to be payable according to the provisions of this chapter, the employer who last employed the claimant prior to the filing of the claim, or the employer's insurer, shall be initially liable for the payment of such compensation. The commissioner shall, within a reasonable period of time after issuing an award, on the basis of the record of the hearing, determine whether prior employers, or their insurers, are liable for a portion of such compensation and the extent of their liability. If prior employers are found to be so liable, the commissioner shall order such employers or their insurers to reimburse the initially liable employer or insurer according to the proportion of their liability. Reimbursement shall be made within ten days of the commissioner's order with interest, from the date of the initial payment, at twelve per cent per annum. . . ."

The statutory language reveals that in order for interest to be assessed, three prerequisites must be met: (1) an award of compensation is made to the claimant; (2) the current employer or employer's insurer "shall be initially liable for the payment of such compensation"; and (3) the commissioner, "within a reasonable period of time after issuing an award, on the basis of the record," must make two determinations: (a) the identification of prior employers or insurers that are liable for a portion of the claimant's compensation; and (b) the extent of their liability. General Statutes § 31-299b. Once those requirements have been met, the commissioner "shall order such [prior] employers or their insurers to reimburse the initially liable employer or insurer" and "[r]eimbursement shall be made within ten days of the commissioner's order with interest, from the date of the initial payment, at twelve per cent per annum." General Statutes § 31-299b.

The plain and unambiguous language of § 31-299b indicates that the only requirement that addresses a commissioner's actions during the adjudication of an apportionment claim is the third one. Both the first and second requirements relate to prior proceedings or agreements that occurred before an apportionment

claim was brought by the initial insurer.[7] The plain meaning of the third requirement unambiguously indicates that the legislature intended that a commissioner is authorized to make a finding only after meeting two conditions: a commissioner's apportionment determination needs to be made (1) within a reasonable period of time after the issuance of an award; and (2) on the record of the hearing.[8] Had the legislature intended to limit a commissioner's authority to make apportionment liability findings when the parties had reached an agreement, it could have expressly done so. See *Marchesi* v. *Board of Selectmen*, 309 Conn. 608, 618, 72 A.3d 394 (2013) ("it is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so" [citation omitted; internal quotation marks omitted]).

Allowing an agreement between insurers to constrain a commissioner's authority to make findings following a hearing on an apportionment claim would be inconsistent with our jurisprudence addressing a commissioner's authority to render a decision in the area of compensation claims. In *Schiano* v. *Bliss Exterminating Co.*, 260 Conn. 21, 25–27, 792 A.2d 835 (2002), the defendant insurer had failed to make timely disability payments following a compensation award to the plaintiff despite several orders from the commissioner. The plaintiff sought a 20 percent penalty on the award pursuant to General Statutes § 31-303 for the late payments.[9] Id., 27–28. At a hearing on the issue, the defendant argued that it was not subject to § 31-303. Id., 28. Before the commissioner's findings were issued, this court had issued a decision holding that the defendant was subject to § 31-303. Id., 28–29. Shortly thereafter, the defendant issued a check to the plaintiff in an amount equivalent to a 20 percent penalty on the disability payments, attorney's fees and interest. Id., 30. The plaintiff subsequently sent a letter to the commissioner's office, indicating that the claim had been settled. Id., 29. The letter was received at the commissioner's office on the same day that the commissioner issued his decision ordering that the defendant pay the penalty on the disability payment only. Id. On appeal to the board, the plaintiff claimed that the commissioner lacked jurisdiction to render a decision because the claim had been rendered moot due to the settlement. Id., 31. The board determined that the claim had not been rendered moot and that the commissioner had jurisdiction to decide whether the defendant was required to pay a penalty on attorney's fees. Id. We agreed with the well reasoned analysis of the board, which held: "Under the [Workers' Compensation Act, General Statutes § 31-275 et seq.], an agreement between parties concerning the payment of disability benefits, medical expenses, or attorney's fees is subject to the approval of the trial commissioner. . . . Once the parties have invoked the jurisdiction of

this agency, any resolution of pending issues involving the payment of compensation must be ratified by the commissioner in order for it to constitute a binding judgment. A settlement is not self-actuating, and does not by its mere existence implicate the trier's subject matter jurisdiction. . . . Instead, the parties must present their contractual compromise to judicial authority, so that he or she may review the agreement and consider entering judgment accordingly. . . . This requires that the parties successfully communicate their intent to settle the case before the commissioner releases his decision." (Internal quotation marks omitted.) Id., 32.

Given the fact that a commissioner retains his authority to adjudicate a claim when the parties have come to an agreement in the context of a penalty for late compensation payments, it would, indeed, be incongruous to conclude that a commissioner rendering a decision regarding an apportionment claim, when the parties have come to a settlement agreement, has less authority.[10]

Additionally, our conclusion is consistent with the board's interpretation of the purpose of the apportionment statute as expressed in *Konovaluk* v. *Graphite Die Mold, Inc.*, No. 4437, CRB 3-01-9 (August 8, 2002). In that case, the board was required to decide whether § 31-299b authorized the reapportionment of an insolvent insurer's share of liability among solvent insurers that were found to be liable for an apportionment share of a claim. Id. In doing so, the board observed that § 31-299b was "primarily designed to protect the interest of claimants, but it was consciously constructed to also allow for an ultimate distribution of liability that would not place an undue burden on the last insurer on the risk. Our legislature would not have directed that 12 [percent] interest be paid on reimbursement amounts if it were indifferent to the ultimate assignment of fiscal responsibility. Despite the absence of specific statutory provisions providing for a recalculation of apportionment percentages in the event of insurer insolvency, the law employs language that allows a commissioner some leeway to account for anomalies that might arise in a case." Id. It continued, "the legislature consciously chose to adopt language that would allow a commissioner to look at the entire hearing record before deciding what portion of compensation is attributable to a given employer or insurer. The statute does not limit each employer/insurer's liability [to] the portion attributable only to its corresponding period of coverage, even if one would expect that this would routinely be the case. Keeping in mind that our legislature wished to afford meaningful protection to the reimbursement rights of the initially liable employer/insurer under § 31-299b, we are of the opinion that this language should be construed to allow the trial commissioner to account for an event such as insurer insolvency in his decision

on reimbursement." Id. In making its determination, the board in *Konovaluk* recognized that one of the purposes of the apportionment statute was to provide meaningful protection to current insurers that were required to administer claims once compensability had been established and that the legislature intended for the commissioner, after considering the entire hearing record, to ensure that the current insurer received such protection.

In the present case, Republic-Franklin does not challenge the commissioner's finding that the sole purpose of the formal hearings was to decide its apportionment liability. Nor does Republic-Franklin contend that additional evidence was required to decide the issue or that the agreement was not a part of the record. Because formal proceedings were completed, the commissioner properly made findings, on the basis of the record of the hearings, of the apportionment liability of Republic-Franklin. That the commissioner chose to accept the percentages agreed upon by AmGuard and Republic-Franklin does not invalidate his authority to make findings.[11] Accordingly, we conclude that the existence of the agreement did not deprive the commissioner of the authority to make a determination as to apportionment liability and to award interest.

## II

We now turn to Republic-Franklin's claim that the commissioner's order of interest was not made within a "reasonable period of time" as required by § 31-299b. Our review of the record reveals that Republic-Franklin failed to preserve this claim, and, therefore, we decline to review it.

The following additional procedural history is necessary to resolve this claim. After the agreement on apportionment liability between Republic-Franklin and AmGuard had been reached, the commissioner held a fourth formal hearing, on December 1, 2010. At the hearing, Republic-Franklin did not argue that the award of interest was not made within a reasonable period of time. Although it primarily argued that the statutory requirements had not been met, Republic-Franklin also contended that insurers were allowed a reasonable amount of time to investigate claims, that it could provide evidence of why Republic-Franklin was not given a reasonable amount of time to investigate due to AmGuard's delays, that AmGuard was barred by laches from seeking interest, and that the imposition of interest only against Republic-Franklin acted as a penalty. The commissioner, however, refused to consider such arguments or evidence, declaring that the reasons why Republic-Franklin confirmed its apportionment share in October, 2012, would not be considered and that none of the proposed documentation would be a part of his findings. He further stated: "We have a pure legal argument here and that is can I award interest based

on what has procedurally transpired in this case." The commissioner limited the question before him to what he deemed a "legal issue": whether Republic-Franklin was correct that interest attaches only if the commissioner must make a determination of apportionment liability or whether AmGuard was correct that interest attaches when formal proceedings have concluded. At the conclusion of the hearing, the parties stipulated to their apportionment share agreements.

The commissioner issued his decision, adopting the agreement that had been reached between Republic-Franklin and AmGuard. The commissioner ordered Republic-Franklin to pay interest. The decision did not reference whether the award was made within a reasonable period of time from the issuance of the award of the claimant's underlying compensation claim.

Following the commissioner's order, Republic-Franklin filed motions to correct and for articulation. In its motion to correct, Republic-Franklin sought to amend the third paragraph of the commissioner's findings, which took administrative notice of the 2004 voluntary agreement between the claimant and Ridgefield, by adding: "Administrative Notice is taken of the date of the first informal hearing held to address AmGuard's apportionment claim pursuant to . . . [§] 31-299b as against [Republic-Franklin] on November 16, 2007, regarding the claimant's bilateral carpal tunnel syndrome [claim] only." Republic-Franklin supported its request for the amendment by stating that the "amendment is material and relevant in order to identify the date when AmGuard first pursued the apportionment claim as against [Republic-Franklin] pursuant to [§] 31-299b." The commissioner denied that correction.

In its motion for articulation, Republic-Franklin asserted that there were inconsistencies within the commissioner's findings, claiming that the commissioner was not required to make findings because of the agreement between Republic-Franklin and AmGuard.[12] Republic-Franklin, thus, requested that "the trial commissioner provide clarification of his decision herein as the factual findings . . . are in clear contradiction to [the] statutory criteria triggering an order of mandatory interest pursuant to . . . [§] 31-299b, which was the basis for said order as against [Republic-Franklin]." The commissioner denied Republic-Franklin's motion for articulation.

Republic-Franklin appealed the commissioner's finding, as well as his denial of its motions to correct and for articulation, to the board. In its brief submitted prior to argument before the board, Republic-Franklin reiterated the position that it had taken at the final formal hearing regarding the statutory criteria. In addition, Republic-Franklin argued that the commissioner refused to allow Republic-Franklin to submit evidence regarding why the matter proceeded to formal hearings,

and documenting AmGuard's delays in prosecuting the claim. With respect to the denial of its motion to correct, Republic-Franklin argued that the commissioner erred because the motion sought to correct his finding to include the fact that the statutory requirements had not been satisfied. With respect to the denial of its motion for articulation, Republic-Franklin maintained it was unclear whether the commissioner issued interest against it pursuant to § 31-299b or General Statutes § 31-300, and, therefore, Republic-Franklin requested that the matter be remanded to the commissioner for clarification.

Republic-Franklin's argument before the board regarding the satisfaction of the statutory requirements was consistent with the position that it had taken in its brief to the board. In addition, Republic-Franklin argued that the statute contemplates a reasonable time period to issue an award and that the commissioner denied its request to submit evidence about why the matter proceeded to formal hearings. Moreover, Republic-Franklin reasoned, after the agreement and reimbursement to AmGuard had occurred, the purpose of the final hearing should have been whether AmGuard pursued its apportionment claim in a reasonable manner after the issuance of the voluntary agreement. But, when counsel for Republic-Franklin was asked during oral argument to the board whether it wanted the matter remanded to determine if its actions were reasonable, counsel responded, "[N]o. We want the trial commissioner's finding and award reversed and the interest denied because I don't believe all the criteria has been satisfied in [§] 31-299b." When asked whether evidence of undue delay was germane under a claim pursuant to § 31-299b, rather than other statutes that specifically referenced unreasonable delay, Republic-Franklin responded that such evidence was pertinent, but that by the time the parties were making arguments at the last formal hearing on December 1, 2010, the reasonableness determination was moot because Republic-Franklin and AmGuard had reached an agreement. Counsel stated that the board did not need to address the reasonableness requirement "because the issue had been resolved."

The board affirmed the decision of the commissioner. It concluded that the commissioner did not commit error in awarding interest against Republic-Franklin because the commissioner was free to either accept or reject the agreement and that the agreement did not prevent the commissioner from awarding interest pursuant to § 31-299b. The board additionally concluded that the commissioner did not err in failing to grant all of the corrections sought by Republic-Franklin because the changes either did not compel a different outcome or were findings that Republic-Franklin would have preferred. Finally, it concluded, after observing that a motion for articulation is appropriate when a commis-

sioner's decision contains some ambiguity or deficiency reasonably susceptible of clarification, that the commissioner did not abuse his discretion in denying the motion for articulation. The board's decision did not address whether the interest award was made within a reasonable period of time of the claimant's award on his compensation claim.

"Practice Book § 60-5 provides in relevant part that [t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . . Indeed, it is the appellant's responsibility to present such a claim clearly to the trial court so that the trial court may consider it and, if it is meritorious, take appropriate action. That is the basis for the requirement that ordinarily [the appellant] must raise in the trial court the issues that he intends to raise on appeal. . . . For us [t]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge. . . . We have repeatedly indicated our disfavor with the failure, whether because of a mistake of law, inattention or design, to object to errors occurring in the course of a trial until it is too late for them to be corrected, and thereafter, if the outcome of the trial proves unsatisfactory, with the assignment of such errors as grounds of appeal." (Internal quotation marks omitted.) *Ravetto* v. *Triton Thalassic Technologies, Inc.*, 285 Conn. 716, 730, 941 A.2d 309 (2008). This rule applies to appeals from administrative proceedings as well. See *Dragan* v. *Connecticut Medical Examining Board*, 223 Conn. 618, 632, 613 A.2d 739 (1992) ("[a] party to an administrative proceeding cannot be allowed to participate fully at hearings and then, on appeal, raise claims that were not asserted before the board").

At every stage of the proceedings until appeal to this court, Republic-Franklin failed to raise distinctly the claim that the commissioner's interest order was not made within a reasonable period of time of the compensation award. At the final formal hearing, the gravamen of Republic-Franklin's argument was that interest should not have been awarded because there was no need for a determination of apportionment liability by the commissioner. Although Republic-Franklin did seek to introduce evidence to establish a lack of timeliness on AmGuard's part for bringing and prosecuting *an apportionment claim*, such evidence was never argued to be applicable to an analysis of whether *the interest order* was issued in a reasonable period of time after the issuance of the compensation award. Indeed, the commissioner's finding does not mention reasonableness at all.

Republic-Franklin's motions to correct and for articu-

lation similarly failed to adequately raise this claim. The only correction that even remotely implicated whether the interest order was made within a reasonable period of time referred to when Republic-Franklin received notice of the carpal tunnel claim, a claim not at issue in the present case. Republic-Franklin did not seek to add a finding that the apportionment claim for the cervical spine claim was not brought within a reasonable period of time or that AmGuard was the reason for any delays in the prosecution of its apportionment claim. Although its motion for articulation obliquely referenced the time period between the approval of the voluntary agreement and formal notice of the apportionment for the cervical spine claim, Republic-Franklin did not argue that the commissioner's finding of interest was improper because his order was not made within a reasonable period of time. Instead, it only claimed that the necessary clarification was whether the commissioner had assessed interest against it pursuant to § 31-299b or § 31-300. Thus, the commissioner never addressed whether the interest award was made within a reasonable period of time.

On appeal to the board, Republic-Franklin challenged the commissioner's finding as well as the denials of its motions to correct and for articulation, but again did not challenge the interest award on the ground that it was not made within a reasonable period of time. None of the arguments raised in its brief to support the claim that the commissioner improperly ordered it to pay mandatory interest raised the reasonableness of the timing of the commissioner's order as a ground for reversal. Rather, Republic-Franklin repeatedly disputed the commissioner's authority to make a determination as to the proportionate share of liability and reimbursement of any prior insurer due to the agreement between Republic-Franklin and AmGuard. In challenging the denial of the motion to correct, although Republic-Franklin mentioned the reasonable period of time requirement, it is clear that it was really challenging the order itself, not the timing of the order. The motion for articulation focused solely on the alleged ambiguity regarding which statutory provision the commissioner relied on in making his finding.

Moreover, Republic-Franklin did not: file a motion to submit additional evidence pursuant to General Statutes § 31-301 (b)[13] so that the board could review the commissioner's refusal to hear evidence regarding AmGuard's alleged delays; argue that the commissioner improperly failed to consider a claim that the interest award was not made within a reasonable period of time; or, ask the board to determine if the interest award was made within a reasonable period of time. In fact, when explicitly asked during oral argument whether the board should remand for a reasonableness determination, counsel for Republic-Franklin said, "[N]o. We want the trial commissioner's finding and award

reversed and the interest denied because I don't believe all the criteria has been satisfied in [§] 31-299b.'' Following the board's decision, there is no evidence in the record to suggest that Republic-Franklin sought a reconsideration based on the board's failure to consider a claim that the commissioner's interest award was not made within a reasonable period of time. As a result, the board did not determine whether the interest order was made within a reasonable period of time.

In sum, Republic-Franklin failed to articulate its claim that the commissioner's interest award was not made within a reasonable period of time of the claimant's award on his compensation claim until its appeal to this court. Although it has mentioned that the finding should be made within reasonable period of time as a statutory requirement, Republic-Franklin has never asked, until now, for review of such argument. As a result, neither the commissioner nor the board has been provided with an opportunity to evaluate this claim. Accordingly, we decline to review it.

The decision of the Workers' Compensation Review Board is affirmed.

In this opinion the other justices concurred.

[1] General Statutes § 31-299b provides in relevant part: "If an employee suffers an injury or disease for which compensation is found by the commissioner to be payable according to the provisions of this chapter, the employer who last employed the claimant prior to the filing of the claim, or the employer's insurer, shall be initially liable for the payment of such compensation. The commissioner shall, within a reasonable period of time after issuing an award, on the basis of the record of the hearing, determine whether prior employers, or their insurers, are liable for a portion of such compensation and the extent of their liability. If prior employers are found to be so liable, the commissioner shall order such employers or their insurers to reimburse the initially liable employer or insurer according to the proportion of their liability. Reimbursement shall be made within ten days of the commissioner's order with interest, from the date of the initial payment, at twelve per cent per annum. If no appeal from the commissioner's order is taken by any employer or insurer within twenty days, the order shall be final and may be enforced in the same manner as a judgment of the Superior Court. . . .''

[2] Republic-Franklin appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] Heavy hit mechanics disassemble totaled motor vehicles, including removing roofs, doors, struts, wheels and hoods, and place the parts in dumpsters. The work also requires a mechanic to bend and twist underneath the dashboard and in the motor vehicle, which puts a mechanic's neck in an awkward position.

[4] "Spinal stenosis is a narrowing of spaces in the spine (backbone) that results in pressure on the spinal cord and/or nerve roots." National Institute of Arthritis and Musculoskeletal and Skin Diseases, National Institutes of Health, "Spinal Stenosis," (January, 2013), available at http://www.niams.nih-.gov/Health Info/Spinal Stenosis/default.asp (last visited September 3, 2014). "[I]f narrowing places pressure on the spinal cord, cauda equina, or nerve roots, there may be a slow onset and progression of symptoms. The neck or back may or may not hurt. More often, people experience numbness, weakness, cramping, or general pain in the arms or legs." Id.

[5] The record does not reveal whether AmGuard and American Alternative resolved the carpal tunnel claim.

[6] In support of this argument, Republic-Franklin also claims that the commissioner denied it an opportunity to present evidence as to: why the case proceeded to formal hearings; the delays by AmGuard in prosecuting its claim; and, why AmGuard should be prohibited due to laches in prosecuting its apportionment claim. Because the board did not address these arguments

when they were raised before it, and Republic-Franklin does not challenge the board's failure to address those arguments, they are unpreserved, and we decline to review them. See *Remillard* v. *Remillard*, 297 Conn. 345, 351, 999 A.2d 713 (2010) ("It is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court." [Internal quotation marks omitted.]).

[7] For this reason, Republic-Franklin's contention that the second prerequisite, acknowledgment of liability by the current insurer, had not been met because the commissioner did not make a finding of who was the current insurer after a formal proceeding on the compensation claim or the apportionment claim, is without merit. This argument not only misconstrues the statutory language of § 31-299b, but also would lead to an absurd and unworkable result. Section 31-299b mandates the current insurer to administer a claim if a compensation award is made. See General Statutes § 31-299b ("[i]f an employee suffers an injury or disease for which compensation is found by the commissioner to be payable according to the provisions of this chapter, the employer who last employed the claimant prior to the filing of the claim, or the employer's insurer, *shall be initially liable* for the payment of such compensation" [emphasis added]). Although it is true that the commissioner must make the initial determination of compensability, including deciding the last date of injury and determining the insurer responsible for administering a claim in instances where the parties do not come to an agreement; see, e.g., *Dinneen* v. *Acands, Inc.*, No. 5664, CRB-3-11-7 (July 3, 2012) (commissioner determined date of last injurious exposure to asbestos and ordered current insurer to administer claim pursuant to § 31-299b); there is no support for the assertion that an order following a formal hearing is the only way that a current insurer could accept liability. In fact, the mandatory language of the statute contemplates that a commissioner need not be involved in the acceptance of liability after compensation has been awarded. There is nothing in the statute that prohibits the liability of a current insurer from attaching following the approval of a voluntary agreement.

In the present case, AmGuard accepted liability when the commission accepted the voluntary agreement. Thus, this requirement was met. Moreover, Republic-Franklin's position that a formal proceeding is the only procedural vehicle that satisfies the second requirement of § 31-299b would have the absurd and unworkable result of requiring current insurers to either litigate all compensation claims or litigate all apportionment claims if a voluntary agreement had been reached. Reading the statutory language in this way would create an untenable burden on the commission and render voluntary agreements meaningless because current insurers would be required to, in essence, contest liability despite having reached a voluntary agreement.

[8] As we explain in part II of this opinion, we decline to review Republic-Franklin's claim that the award was not made within a reasonable period of time after the claimant's award was issued because the claim was not preserved.

[9] General Statutes § 31-303 provides in relevant part: "Any employer who fails to pay within the prescribed time limitations of this section shall pay a penalty for each late payment, in the amount of twenty per cent of such payment . . . ."

[10] We recognize that in *Schiano* the commissioner did not have an opportunity to review the agreement reached by the parties, a different circumstance from the present case. See *Schiano* v. *Bliss Exterminating Co.*, supra, 260 Conn. 32. That distinction, however, does not lessen the import of the holding in *Schiano*, that the commissioner retains the authority to decide whether to accept or reject the agreement brought before him when the parties have chosen to litigate an issue.

[11] For the reasons previously stated in this opinion, the additional arguments made by Republic-Franklin as to why the interest award was improper are unavailing. First, it claims that the interest award was improper because Republic-Franklin did not choose to pursue litigation, but rather asserted its due process rights to investigate AmGuard's apportionment claims. This argument has no bearing on a commissioner's authority to make an apportionment determination when the parties have come to an agreement, but rather, is relevant to whether the interest award was warranted given the procedural posture of the claim.

Republic-Franklin's second claim, that it has standing to challenge the interest award on the basis of the commissioner's failure to assess interest against American Alternative, is similarly specious. Whether the commissioner failed to carry out the spirit of the statute by not assessing interest

against American Alternative, as Republic-Franklin contends, simply has no relevance to an analysis of standing. Its second argument, the failure to award interest as against both Republic-Franklin and American Alternative is an unconstitutional application of § 31-299b, is inadequately briefed. Republic-Franklin has not identified which constitution, state or federal, was violated or which constitutional provisions apply. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Citibank, N.A.* v. *Lindland*, 310 Conn. 147, 165, 75 A.3d 651 (2013). Because Republic-Franklin has provided no analysis to support its claim that § 31-299b was unconstitutionally applied to it, we deem the claim abandoned and decline to review it.

[12] Republic-Franklin additionally observed that the approval of the voluntary agreement occurred three years prior to AmGuard's apportionment claim regarding the carpal tunnel claim, that Republic-Franklin was placed on notice of an apportionment claim for the cervical spine claim at the claimant's 2009 deposition, that the agreement on apportionment liability and reimbursement occurred prior to the conclusion of formal hearings, and that because the reimbursement occurred prior to the conclusion of formal hearings, an order by the commissioner on that issue was not necessary.

[13] General Statutes § 31-301 (b) provides in relevant part: "The Compensation Review Board shall hear the appeal on the record of the hearing before the commissioner, provided, if it is shown to the satisfaction of the board that additional evidence or testimony is material and that there were good reasons for failure to present it in the proceedings before the commissioner, the Compensation Review Board may hear additional evidence or testimony."